Alfred Llewelyn CARTY, Appellant,

v.

The STATE of Texas, Appellee.

Nos. 01–03–01266–CR, 01–03–01267–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

Aug. 4, 2005.

Discretionary Review Refused
Jan. 18, 2006.

Steven J. Lieberman, Houston, TX, for Appellant.

Dan McCrory, Assistant District Attorney, Charles A. Rosenthal, Jr., District Attorney–Harris County, Houston, TX, for Appellee.

Panel consists of Justices NUCHIA, HANKS, and HIGLEY.

## OPINION ON REHEARING

SAM NUCHIA, Justice.

We grant appellant's motion for rehearing, withdraw our opinion issued November 10, 2004, and issue this opinion in its place.

Appellant, Alfred Llewelyn Carty, was charged in two separate indictments with first-degree felony offenses of aggravated sexual assault of his six-year-old daughter, J.C. Appellant pleaded not guilty and the cases were consolidated for trial. A jury found appellant guilty of both offenses. The trial court assessed punishment at 14 years in prison for each charged offense, with the sentences to run concurrently. Appellant presented five issues on appeal. In his first three issues, appellant argues that the trial court erred by (1) admitting into evidence records from the Children's Assessment Center; (2) admitting into evidence the testimony of Tammy Urban regarding the complainant's "outcry" statement; and (3) submitting a disjunctive jury charge in cause number 01–03–01266–CR, which allowed conviction on a non-unanimous verdict. In his fourth and fifth issues, appellant asserts legal and factual insufficiency of the evidence to support the jury's verdict. We affirm the judgment of the trial court in cause number 950073. We sustain appellant's third issue, reverse the trial court's judgment in cause number 954561, and remand that cause for further proceedings.

## BACKGROUND

At the time of the sexual assault, appellant and his common-law wife were separated. Appellant had moved out of the family's apartment and into his own apartment sometime in the spring of 2002. The couple's two children, six-year-old J.C. and her brother, who was 13 years old when he testified at trial, continued to live primarily with their mother. However, the children frequently stayed overnight at appellant's one-bedroom apartment, especially on weekends. On these overnight visits, the children and appellant would sleep in the same bed.

Appellant was indicted for two sexual assaults of J.C. The first assault for which appellant was indicted ("the first assault") [1] took place on or about September 1, 2002. The second assault for which appellant was indicted ("the last assault") [2] took place on or about October 31, 2002.

J.C. testified that appellant touched her "more than once" with his "private part" both on the outside and the inside of her sexual organ. Although J.C. used immature terms in her testimony, the prosecutor had J.C. indicate on a girl doll what part of her body "between the legs" referred to. The record shows that J.C. indicated the vaginal area and vaginal opening of the doll as being "between the legs" and that it was where she would "go number one." The prosecutor also had J.C. indicate on a boy doll what part of appellant's body "his private parts" referred to. The record shows that J.C. indicated the male genital area of the boy doll.

J.C. testified that, prior to placing his penis in contact with her sexual organ and penetrating her with his penis, appellant would put Vaseline on his penis. J.C. was asked if she saw appellant put the Vaseline on his private part, and J.C. responded, "Sometimes, but not all the time." J.C. testified that appellant would touch her

---

1. Appellant was convicted of the first assault in trial cause number 954561, which is number 01–03–01266–CR on appeal.

2. Appellant was convicted of the last assault in trial cause number 950073, which is number 01–03–01267–CR on appeal.

sexual organ with his index and middle fingers. J.C. was also asked whether her brother was always there when appellant did this, and she responded by saying that her brother would "[s]ometimes be somewhere else."

According to the outcry witness, Tammy Urban, J.C. told her that appellant sexually assaulted her every time she stayed overnight at his apartment. Urban elicited details about the assaults. In describing the last assault, J.C. told Urban that appellant pulled her nightgown up and her panties down. Appellant then put Vaseline on and inside her sexual organ with his hand, penetrating her sexual organ with his finger. Appellant then placed his penis in contact with J.C.'s sexual organ and then penetrated her sexual organ with his penis and ejaculated.

In late 2002, sometime between Thanksgiving and Christmas, J.C. informed her mother that appellant was molesting her. There is no evidence in the record indicating whether J.C. ever told her mother any details about the assaults. Her mother instructed J.C. to tell her brother about the molestation, but not to tell anyone else. After telling her mother about the abuse, J.C. never visited appellant again.

On April 30, 2003, an anonymous report was made to the child protective service ("CPS") abuse hotline. On May 14, 2003, CPS caseworker Amy McAndrew took J.C. and her brother from school and drove them to CPS's Children's Assessment Center (the "CAC") where both children were interviewed by CPS investigator Tammy Urban. J.C. described for Urban details of the abuse and identified appellant as the assailant. Later, J.C. was examined by Dr. Rebecca Girardet. Both children were placed in the care of a maternal aunt.

## DISCUSSION

The State asserts that appellant waived his rights to appeal and urges us to dis-

miss. The State bases this claim on the fact that, at the time appellant and the State agreed to a sentence recommendation, they executed standard plea agreement documents, which included a waiver of appeal. The trial court, at that time, also certified that appellant had entered a plea bargain and had no right to appeal. It is obvious from the record, however, that appellant had a jury trial in both cases pursuant to his pleas of not guilty. Further, as the State should have noted, the trial court subsequently filed corrected documents certifying appellant's right to appeal.

### Disjunctive Jury Charge

■ In his third issue, appellant asserts that the trial court erred by submitting a disjunctive jury charge in the case involving the first assault. Appellant contends that this error allowed him to be convicted on less than a unanimous verdict. The indictment for the first assault alleged that appellant had assaulted J.C. in three alternative ways: (1) by placing his sexual organ in contact with J.C.'s sexual organ; (2) by penetrating her sexual organ with his finger; (3) by penetrating her sexual organ with his sexual organ. The jury charge for the case involving the first assault was given in the disjunctive—allowing the jury to convict if it found appellant had sexually assaulted J.C. in any one of the three alleged manners. Appellant contends that this allowed a conviction even if the jury's verdict was not unanimous.

■ When reviewing a trial court's jury instructions, we first determine whether the jury charge was erroneous. *Nguyen v. State*, 811 S.W.2d 165, 167 (Tex.App.-Houston [1st Dist.] 1991, pet. ref'd).

■ Generally, appellant's claim of jury charge error would be without merit. A single indictment may present allega-

tions of different methods of committing the charged offense in the conjunctive and the jury may be charged in the disjunctive. *Kitchens v. State*, 823 S.W.2d 256, 258 (Tex.Crim.App.1991); *Rodriguez v. State*, 89 S.W.3d 699, 702 (Tex.App.-Houston [1st Dist.] 2002, pet. ref'd). There is no general requirement that the jury reach agreement on the preliminary factual issues that underlie the verdict. *Kitchens*, 823 S.W.2d at 259. "It is well settled that when alternative theories of committing the same offense are submitted to the jury in the disjunctive, the jury may return a general verdict if the evidence is sufficient to support a finding under any of the theories submitted." *Bogany v. State*, 54 S.W.3d 461, 463 (Tex.App.-Houston [1st Dist.] 2001, pet. ref'd).

However, the Court of Criminal Appeals decision in *Vick v. State* held that, under Penal Code section 22.021, a charge for the offense for which appellant was indicted was not subject to this general rule. 991 S.W.2d 830 (Tex.Cr.App.1999). In *Vick,* the Court of Criminal Appeals concluded that the Legislature intended each separately described act proscribed by section 22.021 to constitute a separate statutory offense. *Id.* at 832–33. Thus, in this case, submitting the charged offenses in the disjunctive made it possible for some of the jurors to have found that appellant guilty of digital penetration of J.C.'s sexual organ while other jurors chose to find appellant guilty of penetrating or contacting J.C.'s sexual organ with his sexual organ. Appellant was entitled to a unanimous jury verdict, and we hold that the trial court erred in submitting a disjunctive jury charge on the first assault. *See Hendrix v. State*, 150 S.W.3d 839, 848–49 (Tex.App.-Houston [14th Dist.] 2004, no pet.) (holding that trial court erred in submitting disjunctive charge).

▮▮▮ Having found error in the court's charge on the first assault, we must determine whether sufficient harm resulted from the error to require reversal. When, as here, a defendant has made a timely objection and there is error, reversal is required if there is "some harm to the accused from the error." *Almanza v. State*, 686 S.W.2d 157, 171 (Tex.Crim.App. 1984) (op. on reh'g). Thus, we must reverse provided the error is not harmless. *Id.* To determine whether there is harm, we must evaluate "the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole." *Id.* Some harm means any actual harm, regardless of degree. *Arline v. State*, 721 S.W.2d 348, 351 (Tex.Crim.App.1986). But we must measure the error's harmfulness at least in part against the likelihood that the verdict was actually based on another theory of culpability unaffected by the erroneous charge. *Govan v. State*, 682 S.W.2d 567, 570–71 (Tex.Crim.App.1985), *overruled on other grounds by Brown v. State*, 716 S.W.2d 939, 945 (Tex.Crim.App.1986); *see also Atkinson v. State*, 934 S.W.2d 896, 897 (Tex.App.-Fort Worth 1996) (analyzing harm after remand by Court of Criminal Appeals in *Atkinson v. State*, 923 S.W.2d 21, 27 (Tex.Crim.App.1996), *overruled on other grounds by Motilla v. State*, 78 S.W.3d 352, 356 (Tex.Crim.App.2002)).

The Texas Constitution guarantees due course of law and provides that a defendant charged with a felony must be convicted by a unanimous jury. *See* TEX. CONST. art. I, § 19, art. V, § 13; *see also* TEX.CODE.CRIM. PROC. ANN. art. 36.29 (Vernon Supp.2004–2005). Regarding the first assault, after examining the entire jury charge, the jury verdict, the disputed and undisputed evidence, the weight of the probative issues, and the arguments of coun-

sel, we conclude that charging the jury in the disjunctive produced at least some actual harm to appellant because the error in the charge enabled the jury to return a non-unanimous guilty verdict. *See Hendrix*, 150 S.W.3d at 849.

We sustain appellant's third issue and therefore need not consider appellant's remaining issues regarding trial court cause number 954561. Thus, we will consider appellant's remaining issues only as they regard trial court cause number 950073.

### Legal Sufficiency

■ In his fourth issue, appellant complains that the evidence was legally insufficient for the jury to find appellant guilty. In reviewing the evidence on legal sufficiency grounds, we view the evidence in the light most favorable to the prosecution to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *King v. State*, 29 S.W.3d 556, 562 (Tex.Crim.App.2000); *Jackson v. Virginia*, 443 U.S. 307, 318–19, 99 S.Ct. 2781, 2788–89, 61 L.Ed.2d 560 (1979).

Appellant specifically argues that, even if the evidence is sufficient to support a jury finding that he penetrated J.C.'s sexual organ with his penis, the evidence only supports such penetration on one occasion and not two. Thus, according to appellant's argument, his conviction in one of the cases must be reversed because the evidence was not legally sufficient to permit a jury to rationally find that he committed two separate acts of penile penetration.

A review of the record yields legally sufficient evidence to support more than one act of penile penetration. J.C. testified at trial that appellant touched her inside her vagina, which she referred to as the part of her body "between the legs," with his "private part" "more than once." Appellant's assertion that J.C.'s testimony was "not specific enough" to prove two distinct occasions of penile penetration is incorrect. Furthermore, Urban testified at length about the outcry statement, and her testimony regarding J.C.'s statement was consistent with J.C.'s testimony that appellant penetrated her sexual organ with his penis on more than one occasion.

We overrule appellant's fourth issue.

### Factual Sufficiency

■ In his fifth issue, appellant complains that the evidence is factually insufficient to sustain the jury's verdicts finding appellant twice guilty of aggravated sexual assault of a child. Because we have sustained appellant's issue regarding the first assault, we need not address the factual sufficiency of the evidence to support appellant's conviction for the last assault. Appellant admits that there is evidence supporting guilt, but asserts that it is "too weak" and that contrary evidence exists that renders the evidence factually insufficient. We disagree.

In a factual sufficiency review, we view all the evidence in a neutral light, and we will set the verdict aside only if the evidence is so weak that the verdict is clearly wrong and manifestly unjust, or the contrary evidence is so strong that the standard of proof beyond a reasonable doubt could not have been met. *Escamilla v. State*, 143 S.W.3d 814, 817 (Tex.Crim.App. 2004) (citing *Zuniga v. State*, 144 S.W.3d 477, 481 (Tex.Crim.App.2004)). The appellate court should not substitute its own judgment for that of the fact finder. *Jones v. State*, 944 S.W.2d 642, 648 (Tex. Crim.App.1996).

Although she is a child, J.C.'s testimony alone is sufficient to support appellant's conviction. *Ruiz v. State*, 891 S.W.2d 302, 304 (Tex.App.-San Antonio 1994, pet. ref'd). Urban's testimony regarding the outcry statement corroborates J.C.'s testi-

mony. *See Rodriguez v. State*, 819 S.W.2d 871, 873 (Tex.Crim.App.1991) ("[O]utcry testimony admitted in compliance with Art. 38.072 is admitted as an exception to the hearsay rule, meaning it is considered substantive evidence, admissible for the truth of the matter asserted in the testimony."). This testimony stands uncontradicted and is not "so weak that the verdict is clearly wrong and manifestly unjust." *See Escamilla*, 143 S.W.3d at 817.

Appellant cites as evidence "contrary to the verdict," that J.C. did not exhibit obvious signs of physical or emotional trauma and had no behavioral problems, that J.C.'s brother slept in the same bed and professed ignorance of the assaults, and that J.C. and her brother were each given a stuffed animal by "an official employed by the government." But Dr. Girardet examined J.C. more than four months after the last assault and testified that most sexually abused children do not exhibit any physical evidence of the assault—even while the abuse is ongoing. Further, Dr. Lawrence Thompson, a clinical psychologist at the CAC, testified that some victims of child abuse are "overtly asymptomatic" but that "there can be a lot of emotional turmoil going on within them that just isn't showing itself in sort of the common ways." J.C. testified that her brother was asleep on the floor in front of the television during one of the assaults. Her brother testified that he was a very "heavy sleeper" when asked by appellant's trial counsel if he had heard anything.

Finally, appellant complains that a court services employee committed an impropriety by giving J.C. and her brother "gifts prior to eliciting information." Appellant seems to assert that this is evidence "contrary to the verdict." However, the employee gave the children the toys months after J.C.'s outcry statement accusing appellant of the assaults. The employee was not an investigator. Her job was to accompany J.C. to the courtroom. All this testimony, including the opinion of other witnesses as to whether such gifts were improper when given, was in evidence for the jurors to consider when weighing the children's testimony.

The evidence appellant cites as "contrary to the verdict" is either not contrary or goes to the weight the jury gave to particular witnesses or certain testimony. The jury is the exclusive judge of the facts, the credibility of the witnesses, and the weight to be given to the witnesses' testimony. *Jaggers v. State*, 125 S.W.3d 661, 671 (Tex.App.-Houston [1st Dist.] 2003, pet. ref'd). The jury may believe all, some, or none of any witness's testimony. *See Sharp v. State*, 707 S.W.2d 611, 614 (Tex.Crim.App.1986) (stating that jury "could choose to believe or not believe the witnesses, or any portion of their testimony"). A jury decision is not manifestly unjust merely because the jury resolved conflicting views of evidence in favor of the State. *Cain v. State*, 958 S.W.2d 404, 410 (Tex.Crim.App.1997). After reviewing all of the evidence in a neutral light, we do not find the evidence is so weak that the verdict is clearly wrong and manifestly unjust, nor do we find that the contrary evidence so strong that the standard of proof beyond a reasonable doubt could not have been met.

We overrule appellant's fifth issue.

### Admission of Medical Records as Business Records

In his first issue, appellant complains that the trial court erred in admitting into evidence, under the business records exception to the hearsay rule, the CAC's records regarding Dr. Girardet's examination of J.C. We review a trial court's ruling on the admissibility of evidence under an abuse of discretion standard, in light of the evidence before the

trial court at the time the ruling was made, and must uphold the trial court's ruling if it was within the zone of reasonable disagreement. *Weatherred v. State*, 15 S.W.3d 540, 542 (Tex.Crim.App.2000); *Ellis v. State*, 99 S.W.3d 783, 787 (Tex.App.-Houston [1st Dist.] 2003, pet. ref'd).

At trial, appellant objected to the introduction of the business records on the basis that Dr. Girardet was not the custodian of records for the CAC. Appellant's trial counsel stated to the trial court, "My understanding is that [the business record] has to be brought by a person who maintains, who has custody of the record. I could be wrong, Judge."

 The predicate for the business records exception to the hearsay rule may be established either by the custodian of records or another qualified witness. Tex.R. Evid. 803(6); *Lee v. State*, 779 S.W.2d 913, 917–18 (Tex.App.-Houston [1st Dist.] 1989, pet. ref'd). Appellant argues for the first time on appeal that the business records should not have been admitted because Dr. Girardet was not "another qualified witness" under Rule 803(6) and, alternatively, that there was no testimony that the CAC kept such records as a regular practice. These claims were not preserved for our review. To preserve error for appellate review, a defendant must make a specific objection in the trial court. *Wilson v. State*, 71 S.W.3d 346, 349 (Tex. Crim.App.2002); Tex.R.App. P. 33.1(a)(1)(A). The point of error on appeal must comport with the specific objection made at trial. *Wilson*, 71 S.W.3d at 349. An objection stating one legal basis may not be used to support a different legal theory on appeal. *Rezac v. State*, 782 S.W.2d 869, 870 (Tex.Crim.App.1990).

We overrule appellant's first issue.

## Admission of Testimony Regarding the "Outcry" Statement

In his second issue, appellant complains that the trial court should not have allowed Urban to testify about the outcry statement J.C. made during their interview at the CAC. Appellant complains that Urban was not the first person J.C. told she was sexually abused, and that the statement made to Urban was not reliable based on the time, content, and circumstances under which it was made.

### 1. First person requirement under article 38.072

 A child-abuse victim's statement to another is not inadmissible hearsay if the statement describes the alleged offense and the person to whom the statement is made is at least 18 years old and is the first person to who the child made a statement about the offense. Tex.Code Crim. Proc. Ann. art. 38.072 (Vernon Supp. 2004–2005). A court's decision that the outcry statement is reliable and admissible under article 38.072 is reviewed for an abuse of discretion. *Broderick v. State*, 89 S.W.3d 696, 698 (Tex.App.-Houston [1st Dist.] 2002, pet. ref'd).

At a hearing outside the jury's presence, appellant argued that only the first person to whom a sexually abused child made a statement qualified as the outcry witness. Appellant argued that, because J.C.'s mother was the first person to whom J.C. made a statement about the offense, only she could testify as to any outcry statement under article 38.072.

The Court of Criminal Appeals in *Garcia v. State* held that, at least where the child makes only a "general allusion" of sexual abuse to the first person, but gives a more detailed account to a second person, the second person may be the proper outcry witness. 792 S.W.2d 88, 91 (Tex. Crim.App.1990). In *Garcia*, the Court in-

terpreted the "first person" and "statement about the offense" language in article 38.072 to mean that the outcry witness must be the first person, 18 years old or older, to whom the child made a statement that in some discernible manner described the alleged offense. *Id.* Despite the fact that the child first told her teacher about her step-father's abuse, the Court held that the trial court properly designated another person as the outcry witness because that person was the "first person" to whom the child actually described the offense in a discernable manner. *Id.* at 91–92; *accord Hayden v. State,* 928 S.W.2d 229, 231 (Tex.App.-Houston [14th Dist.] 1996, pet. ref'd) (holding that child protection service worker was proper outcry witness because there was no evidence that school counselor to whom child first made outcry statement was given any details of alleged offense); *Anderson v. State,* 831 S.W.2d 50, 54 (Tex.App.-Fort Worth 1992, pet. ref'd) (holding that mother was not proper outcry witness, despite being first person child told of father's abuse, because mother refused to admit statement was made to her, refused to cooperate with authorities, and had been convicted of related offense). The Court in *Garcia* stated the following:

> In picking the particular wording of the "first person" requirement, the legislature was obviously striking a balance between the general prohibition against hearsay and the specific societal desire to curb the sexual abuse of children ...
> [and] ... the societal interest in curbing child abuse would hardly be served if all that "first person" had to testify to was a general allegation from the child that something in the area of child abuse was going on at home.
>
> ...
>
> In order to be designated as the outcry witness by the trial court, one element that must be clearly shown by the evi-

dence is that the victim described the offense to that witness.

...

> We emphasize that from this record we cannot determine what it was that complainant told her teacher.

792 S.W.2d at 91.

A review of the record in this case yields no evidence that J.C. told her mother the details of the charged offenses. Further, the State informed the trial court at the article 38.072 hearing that J.C.'s mother was under indictment for failing to report appellant's abuse of J.C., was unavailable to talk to the prosecutor, refused to cooperate with the police, and refused to admit that J.C. made an outcry statement to her. Appellant did not dispute the State's assertions. *See Pitts v. State,* 916 S.W.2d 507, 510 (Tex.Crim.App.1996) ("This Court accepts as true factual assertions made by counsel which are not disputed by opposing counsel."). Urban was the first adult to whom an outcry statement was made who could remember J.C.'s statement and relate it at trial. *See Foreman v. State,* 995 S.W.2d 854, 858–59 (Tex.App.-Austin 1999, pet. ref'd) (holding that article 38.072 allows "the first adult who can remember *and relate at trial* the child's statement" to be the outcry witness) (emphasis added).

### 2. Reliability of the outcry statement made to Urban

 Appellant also argues that the trial court erred in admitting Urban as the outcry witness because the outcry statement was unreliable. As a prerequisite to admitting testimony about the outcry statement, the trial court is required to find that the statement is reliable based on "the time, content, and circumstances of the statement." TEX.CODE CRIM. PROC. ANN. art. 38.072 § 2(b)(2) (Vernon Supp.2004–2005). The phrase "time, content, and cir-

cumstances" refers to the time the child makes the statement to the proffered outcry witness, the content of the statement, and the circumstances surrounding the making of the statement. *Broderick v. State,* 89 S.W.3d 696, 699 (Tex.App.-Houston [1st Dist.] 2002, pet. ref'd).

 Appellant specifically complains that the State's evidence showed the outcry statement J.C. made to Urban was merely a "general allusion to sexual abuse" and that "Urban was not familiar with any circumstances surrounding the case, or aware of any evidence corroborating the complainant's statement." Appellant's complaints are without merit. The outcry statement J.C. made to Urban was not merely a general allusion. It was detailed and in a "discernable manner describes the alleged offense." *See Garcia,* 792 S.W.2d at 91. The test for reliability looks to the circumstances surrounding the making of the statement and not the circumstances of the abuse as appellant implies. *See Broderick,* 89 S.W.3d at 699.

The evidence in the record supports the trial court's finding that the statement was reliable based on the time J.C.'s statement was made, the content of her statement, and the circumstances surrounding her making the statement. J.C. made the statement to Urban after her mother instructed her not to tell anyone other than her brother. Urban testified that J.C. stated that she knew the difference between a lie and the truth and promised to tell Urban the truth. J.C. described the assaults to Urban in detail and in her own words, using immature language. Urban's testimony about the outcry statement was consistent with J.C.'s testimony at trial and Urban stated that she asked J.C. open-ended, not leading, questions.

We hold that the trial court did not err in allowing Urban to testify as the outcry witness. We overrule appellant's second issue.

## CONCLUSION

We affirm the judgment of the trial court in cause number 950073. We reverse the judgment of the trial court in cause number 954561 and remand the cause to the trial court for further proceedings consistent with this opinion.