**AFFIRMED; Opinion Filed May 22, 2014.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-12-01472-CR

**ROY RODGERS, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the Criminal District Court No. 7**
**Dallas County, Texas**
**Trial Court Cause No. F11-58855-Y**

## OPINION

Before Justices FitzGerald, Fillmore, and Evans
Opinion by Justice Evans

A jury found appellant Roy Rodgers guilty of continuous sexual abuse of a young child and assessed punishment at seventy years' imprisonment. Appellant contends the trial court erred by allowing the jury to "change" its guilt/innocence verdict during the punishment phase of trial. He also complains about a forensic interviewer testifying as the outcry witness and the sufficiency of the evidence to support the trial court's cost award of $239. Concluding appellant's points of error lack merit, we affirm the trial court's judgment.

## BACKGROUND

The complaining witness J.H. was eleven years old at the time of trial. He testified that appellant, his uncle, first sexually abused him when he was at the end of third grade. J.H. testified that the first and subsequent incidents occurred while he and his family were living with his uncle, aunt, and their children in a trailer. He further testified the abuse continued through

fourth grade and the summer before he started fifth grade. At about 10:30 p.m. on August 16, 2011, J.H. told his mother that his uncle had been touching him. According to J.H.'s mother, he told her it had been going on for a while, but he could not give her details at that time. That same night, the police were called and J.H. was taken to the Dallas Children's Advocacy Center where he was interviewed by Jessenia Gonzalez, a forensic interviewer, in the early morning hours of August 17. Gonzalez testified at trial as the outcry witness. She recounted seven separate instances of sexual abuse reported by J.H. that occurred while he was in the fourth grade before summer and during summer. The investigating police officer, J.H.'s mother, J.H.'s therapist, and a physician who examined J.H. also testified on behalf of the State. The defense did not present any witnesses at the guilt/innocence stage of trial.

After both parties rested, the jury was instructed on the offense of continuous sexual abuse of a young child and the lesser-included offenses of aggravated sexual assault of a child and indecency with a child. The jury was also provided two pages of verdict forms. The top of the first page had a space for the presiding juror to sign a verdict of guilty of continuous sexual abuse of a young child. Below that, there were spaces where the presiding juror had the option to sign a guilty verdict for aggravated sexual assault of a child, or a guilty verdict of indecency with a child by contact between the hand of the defendant and any part of the genitals of the complainant with the intent to arouse or gratify the sexual desire of the defendant. Alternatively, at the top of the second page of the verdict forms, the presiding juror could sign a verdict of guilty of indecency with a child by contact between the hand of the complainant and any part of the genitals of the defendant with the intent to arouse or gratify the sexual desire of the defendant. Below that, the presiding juror could sign a verdict of not guilty.

The jury returned a guilty verdict with the presiding juror's signature beneath the lesser included offense of indecency with a child that appeared on the top of the second page of the

verdict forms. The following exchange then occurred between the jury foreman and the trial court:

> THE COURT: [Foreman], it's my understanding that you are the foreman of the jury; is that correct, sir?
>
> THE FOREMAN: Yes, sir.
>
> THE COURT: It is also my understanding that the jury has reached a unanimous verdict in this case; is that correct?
>
> THE FOREMAN: Yes, sir.
>
> THE COURT: Accused and counsel, please stand and receive the verdict.
>
> The verdict in the case of State of Texas versus Roy Rodgers is as follows: We, the jury find the defendant guilty of indecency with a child by contact between the hand of the complainant and any part of the genitals of the defendant with intent to arouse or gratify the sexual desire of the defendant as included in the indictment.
>
> You may be seated.
>
> Ladies and gentlemen of the jury, as you know – as you know, the defendant in the State of Texas has the right to ask the jury to decide his punishment in the event of a conviction. He has asked that you do that in this case.
>
> [Foreman], is the jury ready to proceed with the punishment phase or do y'all need a break?
>
> THE FOREMAN: We need a break.
>
> THE COURT: I will give you ten minutes. All rise for the jury.
>
> (Recess.)

After the break, the jury heard the evidence on punishment consisting of brief testimony from two witnesses. At the conclusion of the punishment evidence,, a hearing was held outside the presence of the jury about the punishment charge. During that hearing, the bailiff indicated he needed to speak to the judge. After a pause in the proceedings, the trial court stated:

> THE COURT: The foreman of the jury has indicated to me that he meant to sign the continuous sexual abuse of a child verdict form and incorrectly signed the form that he signed. I will give you ten minutes to figure out what to do. We're in recess.

–3–

(Recess.)

THE COURT: Back on the record. The jury foreman has informed me that the jury erroneously signed the incorrect jury charge and intended to convict the defendant of continuous sexual abuse of a child.

The Court has conducted research and has located a case which says that since the jury has not been discharged that I can bring them out and ask them if that is their verdict and poll them individually.

I'm sure you object to that; is that right, sir?

[Defense Counsel]: Yeah, I would object. The Court has already accepted the verdict and we had already begun the punishment phase and sworn in witnesses and proceeded in punishment.

The Court overruled the objection and then stated the following:

THE COURT: . . . For the record, the Court noted the jury talking amongst themselves as the State was asking the witness about the penalty range, and an obvious shock and disbelief as to the punishment range, which was a further indication that they realized that they had signed the incorrect verdict form.

When the jury returned, the trial court continued,

THE COURT: Now, [Foreman], you are the foreman of the jury. You indicated to the bailiff, who then indicated to me that you mistakenly signed the incorrect verdict in the case and you, in fact, intended to sign a different verdict; is that right?

THE FOREMAN: That's correct.[1]

THE COURT: Accused and counsel, please stand and receive the verdict.

The verdict in the case of State of Texas versus Roy Rodgers is as follows: We, the jury, find the defendant guilty of continuous sexual abuse of a young child as charged in the indictment.

You may be seated.

I will now poll the jury.

[Defense Counsel]: At this point, we would renew our objection to the Court's –

THE COURT: And that is overruled.

---

[1] The clerk's record on appeal contains the presiding juror's signature on both the guilty verdict on the top of the first page (continuous sexual abuse of a young child) and the top of the second page (indecency with a child by contact) of the verdict forms. Neither is stricken through or otherwise defaced.

–4–

(Footnote added.) The trial court then polled the jury. Each juror agreed it was their verdict. The trial court then instructed the jury on punishment relating to continuous sexual abuse of a young child, and the parties made their closing arguments. After deliberating, the jury returned a verdict sentencing appellant to seventy years' imprisonment.

## ANALYSIS

### I. Correction of Guilty Verdict

In his first point of error appellant argues that the trial court had no authority to allow the jury to correct its guilty verdict after the jury foreman advised the court he had signed the wrong verdict form. Appellant asserts that the trial court's action of permitting the jury to "change" its verdict after hearing evidence on punishment violated the code of criminal procedure and "usurped the bifurcated trial process." He contends that once the jury returned a verdict at the conclusion of guilt/innocence that was read aloud in open court and to which no juror dissented, it could not be changed.[2] *See* TEX. CODE CRIM. PROC. ANN. art. 37.04 (West 2006). Appellant further argues that any problem with the guilt/innocence verdict must be resolved before it is "accepted" and the jury could not revisit their guilty verdict after the punishment phase began.[3]

Courts have no power to change a jury's verdict unless it is with the jurors' consent before they disperse. *Ex parte McIver*, 586 S.W.2d 851 (Tex. Crim. App. 1979). Courts have consistently decided that trial courts do not err when the court returns the jury to further deliberate or correct the verdict form after the jury informs the court there was a written mistake in filling out the verdict form. *See Reese v. State*, 773 S.W.2d 314 (Tex. Crim. App. 1989) (no error in trial judge twice sending jury back for further deliberations); *Jones v. State*, 511 S.W.2d

---

[2] Neither party requested a jury poll of the guilty verdict.

[3] Although appellant uses the term "accepted," the code of criminal procedure does not use this term. Article 37.04 provides in relevant part, "If in proper form and no juror dissents therefrom, and neither party requests a poll of the jury, the verdict shall be entered upon the minutes of the court." TEX. CODE CRIM. PROC. ANN. art. 37.04.

514 (Tex. Crim. App. 1974) (no error in trial judge returning jury to correct verdict after observing variance between written verdict and jurors' responses to poll of jury); *Lane v. State*, No. 02-08-309-CR, 2010 WL 1730845 (Tex. App.—Fort Worth Apr. 29, 2010, pet. ref'd) (mem. op., not designated for publication) (no error in trial court returning jury to correct verdict form when jury communicated error to bailiff while court read verdict to defendant). We are unpersuaded by appellant's attempt to distinguish these cases.

As support for his position, appellant cites the code of criminal procedure which provides the punishment hearing cannot begin until a guilty verdict has been returned on guilt/innocence. *See* TEX. CODE CRIM. PROC. ANN. art. 37.07, § 2 (West Supp. 2013). He also cites cases which he asserts support his position that a trial court may not allow the jury to deliberate further when they return a unanimous and sufficient verdict. But appellant's cases are factually distinguishable from the one before us because they involve a trial court's refusal to poll a jury or returning a jury to further consider its written verdict with no indication in the record of the trial court's reason for so doing. *See White v. State*, 492 S.W.2d 281 (Tex. Crim. App. 1973) (trial court erred by refusing to poll jury as requested and ordering further deliberations when "guilty" written on charge, but "not guilty" verdict was signed in space for jury foreman's signature); *Hay v. State*, 472 S.W.2d 157 (Tex. Crim. App. 1971) (error for trial court to order jury to further consider their verdict after foreman signed verdict of "not guilty" when no basis in record for trial court to know the foreman signed wrong form). These cases do not compel the conclusion that the trial court erred by allowing the jury to correct its mistake in this case.

Here, the record reflects that during the punishment phase, the trial court received information from the jury foreman, through the bailiff, that the original verdict of guilty of indecency with a child was not the decision of the jury. Instead, as affirmed by the jury foreman and every other juror after polling, the jury unanimously intended to find appellant guilty of

–6–

continuous sexual abuse of a young child. The jury had not been discharged nor had it separated at the time the mistake was discovered and the trial court allowed the mistake to be corrected. The trial court's decision is consistent with court of criminal appeals opinions permitting jurors who have been dismissed, but have not separated and are still in the court's presence, to correct their verdict after the trial court becomes aware of a problem with the verdict. *See Webber v. State*, 652 S.W.2d 781, 782 (Tex. Crim. App. 1983); *West v. State*, 340 S.W.2d 813, 814–15 (Tex. Crim. App. 1960). Appellant has cited no authority that prohibits the trial court from allowing the jury to correct its mistake to reflect the jury's true decision on guilt/innocence when the mistake is first discovered during the punishment phase of the trial. In fact, the jury verdict is not complete until a verdict has been rendered on both the guilt or innocence of the defendant and the amount of punishment. *See* TEX. CODE CRIM. PROC. ANN. art. 37.07(3)(c). Accordingly, we conclude the trial court did not err by permitting the jury to correct its verdict.

In reaching our conclusion, we necessarily reject appellant's contention that the trial court's action "usurped the bifurcated trial process required by the code of criminal procedure." As noted, appellant cites no authority precluding the trial court's action. Moreover, as appellant points out, the bifurcated procedure was designed to "take the blindfolds off . . . when it came to assessing punishment . . . thus allow[ing] evidence critical to an enlightened determination of punishment . . . ." *Ellison v. State*, 201 S.W.3d 714, 718 (Tex. Crim. App. 2006) (quoting *Davis v. State*, 968 S.W.2d 368, 372 (Tex. Crim. App. 1998)). For that reason, what is admissible as relevant to punishment "is no longer constrained by considerations of what is patently inadmissible at the guilt phase of trial." *See Sims v. State*, 273 S.W.3d 291, 294 (Tex. Crim. App. 2008). These considerations are not implicated in the case before us because the jury decided the guilt/innocence of appellant before the punishment phase began. The jury simply

did not realize its error in the written form of the verdict until the punishment phase was underway. We overrule appellant's first point of error.

## II. Outcry Witness

In his second point of error, appellant contends the trial court erred by allowing a forensic interviewer to testify as the outcry witness. Appellant asserts the only proper outcry witness was J.H.'s mother. The State responds that J.H. did not give sufficient information to anyone other than the forensic interviewer to establish that appellant's conduct satisfied the elements of continuous sexual abuse of a young child.

We review the trial court's outcry witness designation for an abuse of discretion. *Garcia v. State*, 792 S.W.2d 88, 91–92 (Tex. Crim. App. 1990). Article 38.072 of the code of criminal procedure permits outcry statements by certain victims of child abuse to be admitted during trial despite the hearsay rule, provided that the article's requirements are met. *See* TEX. CODE CRIM. PROC. ANN. art. 38.072 (West Supp. 2013). Here, appellant's argument is based on the requirement that the outcry witness be the first person to whom the victim made statements about the offense. *Id*. § 2(a). But the statute requires more than a general allusion to child abuse by the victim. *See Garcia*, 792 S.W.2d at 91. Under article 38.072, the outcry witness is the first person "to whom the child makes a statement that in some discernable manner describes the alleged offense." *Id*. In this case, J.H. made general allusions of abuse to his mother but it was not until he spoke to the forensic interviewer that he made all of his allegations and it became clear the sexual abuse involved multiple incidents for a period of thirty days or more. *See Brown v. State*, 381 S.W.3d 565, 571–72 (Tex. App.—Eastland 2012, no pet.) (no abuse of discretion in permitting forensic interviewer to testify as outcry witness where prior statements by victim to others were no more than general allusions to sexual abuse). Based on the record before us, we

cannot conclude the trial court erred by determining the forensic interviewer was the proper outcry witness. *See id.* We overrule appellant's second point of error.

## III. Costs

In his third point of error, appellant challenges the sufficiency of the evidence to support the trial court's assessment of $239 in court costs. Specifically, appellant argues that there is no written bill of costs in the clerk's record as required by article 103.001 of the code of criminal procedure. The record before us contains a bill of costs. Appellant's complaints, including his objection to the supplemental record containing the bill of costs, have been addressed and rejected. *See Johnson v. State*, 423 S.W.3d 385, 391–94 (Tex. Crim. App. 2014); *Coronel v. State*, 416 S.W.3d 550, 555–56 (Tex. App.—Dallas 2013, pet. ref'd.). We overrule appellant's third point of error.

We affirm the trial court's judgment.

/David Evans/
DAVID EVANS
JUSTICE

Publish
TEX. R. APP. P. 47
121472F.P05

–9–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

ROY RODGERS, Appellant

No. 05-12-01472-CR       V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court
No. 7, Dallas County, Texas
Trial Court Cause No. F11-58855-Y.
Opinion delivered by Justice Evans.
Justices FitzGerald and Fillmore
participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.


Judgment entered this 22nd day of May, 2014.


/David Evans/
DAVID EVANS
JUSTICE