

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

MIGUEL ESTEBAN SALINAS, §

               Appellant, §

v. §

THE STATE OF TEXAS, §

               Appellee. §

§

No. 08-19-00017-CR

Appeal from the

371st District Court

of Tarrant County, Texas

(TC# 1524518D)

## **O P I N I O N**

Appellant Miguel Esteban Salinas was found guilty by a jury on one count of continuous sexual abuse of a child under 14 and one count of indecency with a child by contact. Salinas raises three issues alleging error in the admission or exclusion of evidence, including outcry testimony. We affirm.[1]

## I. BACKGROUND

Salinas, who was I.E.'s mother's boyfriend, moved in with I.E.[2], her mother, and her

---

[1]  This case was transferred to us from the Second Court of Appeals pursuant to the Texas Supreme Court's docket equalization efforts. We apply the precedents from that court where they might conflict with our own. TEX. R. APP. P. 41.3.

[2]  To protect the identity of the minor-victim, we use initials throughout our opinion. *See* TEX. R. APP. P. 9.10(a)(3).

brother during the summer after I.E. completed third grade. Apparently there were no problems until I.E. was in fifth and sixth grade and was home alone with Salinas after school. I.E. testified that "things started changing" between her and Salinas at that time. At first, Salinas would invite her to watch pornography with him on his phone. Then he started touching her breasts and crotch with his hands, sometimes with her clothes on and sometimes with them off. Salinas later progressed to touching I.E. with his mouth and his penis. The touching occurred approximately weekly during I.E.'s fifth and sixth grade years. Additional instances of inappropriate touching occurred during I.E.'s seventh and eighth grade years, but not as frequently. The last instance occurred when I.E. was 13 years old.

I.E. eventually told a friend, in general terms, that Salinas had been "doing sexual acts to me." The friend told her mother, who told I.E.'s mother, who immediately took I.E. and her brother and left the house they shared with Salinas. I.E. testified that she spoke to "a lady" at the Alliance for Children about what Salinas had done to her, and that that lady was the first person she told in detail about what had happened.

Salinas was indicted on eight counts of sexual offenses against I.E. The first count charged that Salinas committed two or more acts of sexual abuse, namely aggravated sexual assault of a child under 14, during a period of time that is 30 days or more in duration, occurring on or about the 1st day of July 2013 through the 31st day of October 2017, *i.e.*, continuous sexual abuse of a child under 14. Counts two through five charged sexual abuse of a child, occurring on or about October 31, 2017. Counts six through eight charged indecency with a child, also occurring on or about October 31, 2017.

2

I.E. testified at trial, as did "the lady" she spoke to from the Alliance for Children. That lady was forensic interviewer Alexis Harrison.[3] Salinas testified in his own defense. The jury returned verdicts of guilty on the count of continuous sexual abuse of a child under 14 and on one count of indecency with a child by contact and assessed punishment of confinement of 64 years and 18 years, respectively, as to each charge. The trial court entered judgment accordingly with each sentence to run consecutively.

## II. DISCUSSION

On appeal, Salinas raises three issues implicating evidentiary error. In his first issue, he contends that the trial court erred by refusing to allow him to testify concerning events occurring on October 31, 2017, the date alleged in the indictment as the date of the offenses. In his second issue, he contends that the trial court erred by admitting outcry testimony because the State did not furnish a written summary of the statement, and the court did not conduct a hearing on, or make a finding of, the reliability of the statement. Salinas's final issue is that the trial court erred by finding that Alexis Harrison was the proper outcry witness.

### *Standard of Review*

A trial court's ruling admitting or excluding evidence is reviewed for abuse of discretion. *Rhomer v. State*, 569 S.W.3d 664, 669 (Tex. Crim. App. 2019); *Beham v. State*, 559 S.W.3d 474, 478 (Tex. Crim. App. 2018). This standard applies with equal force to the trial court's determination of who is a proper outcry witness. *See Garcia v. State*, 792 S.W.2d 88, 92 (Tex. Crim. App. 1990) (applying abuse of discretion standard to decision that witness was proper outcry witness). "The trial court abuses its discretion when it acts without reference to any guiding rules

---

[3] Alexis Harrison is sometimes referred to in the record as Alexis Chase.

3

and principles or acts arbitrarily or unreasonably." *Rhomer*, 569 S.W.3d at 669 (citing *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990)). A trial court's evidentiary ruling will thus be upheld as long as it is within the "zone of reasonable disagreement." *Beham*, 559 S.W.3d at 478. In addition, a trial court's evidentiary ruling will be upheld on any correct theory of law that finds support in the record. *Gonzalez v. State*, 195 S.W.3d 114, 126 (Tex. Crim. App. 2006).

## A. Exclusion of Salinas's Testimony Concerning Events of October 31, 2017

In his first issue, Salinas argues that the indictment charged him with committing continuous sexual abuse of a child under 14, occurring on or about July 1, 2013, through October 31, 2017. The remaining seven counts charged Salinas with committing additional sexual offenses against the child, also on or about October 31, 2017. During trial, Salinas began to testify about taking I.E. and her brother trick-or-treating with another family on that date, when the State lodged an objection to the relevance of the testimony. The following exchange then occurred at the bench:

> THE COURT: Okay. What is the relevance?
>
> DEFENSE COUNSEL: This is the day that's in the indictment that the offense occurred.
>
> THE COURT: It does not matter. You understand that that date is meaningless.
>
> DEFENSE COUNSEL: I understand.
>
> THE COURT: So we're not going to litigate that day.
>
> DEFENSE COUNSEL: I understand.

4

On appeal, Salinas argues that he was attempting to establish that no offense occurred on October 31, 2017, the date alleged in the indictment.[4] He urges that, if he had been allowed to cast doubt on the most recent allegation in the indictment, he may have also created doubt concerning the victim's other allegations against him. Countering this argument, the State responds that Salinas was otherwise permitted to question both I.E. and Salinas about whether any sexual activity occurred on October 31, 2017.

### *Relevance*

"Relevant evidence" is defined as evidence that tends to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence. TEX. R. EVID. 401. To be relevant, evidence must be material. *Henley v. State*, 493 S.W.3d 77, 83 (Tex. Crim. App. 2016). "For evidence to be material, it must be shown to be addressed to the proof of a material proposition," *i.e.*, "any fact that is of consequence to the determination of the action." *Id.* Evidence that is offered to prove a proposition that is not a matter in issue is immaterial and, therefore, irrelevant. *Id.* The question here, then, is whether evidence that no sexual offense occurred precisely on October 31, 2017 is a fact of consequence to the determination of the charges against Salinas. *See id.*

"It is well settled that the 'on or about' language of an indictment allows the State to prove a date other than the one alleged in the indictment as long as the date is anterior to the presentment of the indictment and within the statutory limitation period." *Sledge v. State*, 953 S.W.2d 253,

---

[4] During the bench conference at trial, Salinas argued that the purpose of the evidence was to show that a family problem arose on that day that "arguably, gives [I.E.] motive." The State objected based on speculation and the trial court agreed. The court did, however, allow Salinas to introduce evidence that unspecified events of October 31, 2017 caused a problem in the family. Salinas does not pursue the "motive" argument on appeal.

256 (Tex. Crim. App. 1997); *see Garcia v. State*, 981 S.W.2d 683, 685 (Tex. Crim. App. 1998) (State is not bound by "on or about" date alleged in indictment). Because the State was not required to prove that an offense *did* occur on October 31, 2017, proof that an offense did *not* occur on that date is not a fact of consequence. *See Henley*, 493 S.W.3d at 83. Salinas's testimony purporting to show that no offense occurred on October 31, 2017 was immaterial and irrelevant. *See id.*; TEX. R. EVID. 401. The trial court did not abuse its discretion by excluding that evidence.

In addition, Salinas has not demonstrated that any error in excluding his testimony warrants reversal of his conviction. Rule 103 of the Texas Rules of Evidence provides that a party may claim error in the exclusion of evidence only if the error affected a substantial right of that party. TEX. R. EVID. 103(a) ("Rule 103(a)"). Similarly, the reversible error rule for criminal cases provides that error, other than constitutional error, must be disregarded if it does not affect a substantial right. TEX. R. APP. P. 44.2(b) ("Rule 44.2(b)"). In the case of constitutional error that is subject to harm analysis, an appellate court must reverse a conviction unless it determines beyond a reasonable doubt that the error did not contribute to that conviction. TEX. R. APP. P. 44.2(a) ("Rule 44.2(a)").

Salinas contends that error in excluding his testimony concerning events of October 31, 2017 violated his constitutional right to present a complete defense. *See Anderson v. State*, 301 S.W.3d 276, 280 (Tex. Crim. App. 2009) (recognizing constitutional right to a meaningful opportunity to present a complete defense stemming from Fourteenth Amendment's Due Process Clause and Sixth Amendment's Compulsory Process and Confrontation Clauses). The apparent significance of this contention is to invoke the more favorable reversible error analysis of Rule 44.2(a). But the exclusion of evidence is not of constitutional dimension if it did not prevent the

defendant from making his defense. *See Potier v. State*, 68 S.W.3d 657, 666 (Tex. Crim. App. 2002). The fact that a defendant was not able to present his case "to the extent and in the form he desired" is not prejudicial if he was not prevented from presenting the substance of his defense. *Id.*

Salinas's defense, as relevant to the exclusion of evidence issue, was that no sexual offense occurred on October 31, 2017. While the trial court curtailed his effort to testify to that effect, he was not prejudiced by that ruling because he had already presented the substance of the defense through the testimony of the victim, herself.

> Q. [DEFENSE COUNSEL] Do you believe that sexual activity occurred between you and Miguel on October 31st, 2017?
>
> A. [I.E.] No.
>
> Q. And why do you say that?
>
> A. Because I do not remember anything specifically on Halloween.

Any error in excluding Salinas's testimony concerning October 31, 2017 is not of constitutional dimension because it did not prevent him from making his defense. *See Potier*, 68 S.W.3d at 666. Our harm analysis is thus governed, not by Rule 44.2(a), but by Rule 44.2(b) and Rule 103, both of which require a showing that the asserted error affected a substantial right. *See* TEX. R. EVID. 103(a); TEX. R. APP. P. 44.2(b).

As noted, Salinas was able to introduce the substance of his defense through the testimony of the victim. His own testimony that no sexual offense occurred on that date would have been cumulative of that testimony. The record does not demonstrate that the trial court's evidentiary ruling affected any substantial right; any error in that ruling was harmless. *See* TEX. R. EVID. 103(a); TEX. R. APP. P. 44.2(b). Salinas's first issue is overruled.

7

## B.  Procedural Challenges to Admission of the Outcry Statement

In his second issue, Salinas argues that the trial court erred in *not* holding a hearing on the reliability of the outcry statement, following the hearsay objection made by Salinas, as required by Article 38.072.  We disagree.

### *Article 38.072*

An out-of-court statement by a victim of certain sexual offenses who is under the age of 14, is admissible in evidence if the statement describes the offense and is offered into evidence by the first adult the victim told about the offense.  *Sanchez v. State*, 354 S.W.3d 476, 484 (Tex. Crim. App. 2011); TEX. CODE CRIM. PROC. ANN. art. 38.072.   The statement is commonly referred to as an "outcry statement," and the adult who testifies about the outcry statement is referred to as an "outcry witness."  *Sanchez*, 354 S.W.3d at 484.

Admissibility of outcry testimony is subject to several procedural requirements.  *See id.*; TEX. CODE CRIM. PROC. ANN. art. 38.072.   One of those requirements is that, at least 14 days prior to trial, the State must provide the defendant with a written summary of the statement.  TEX. CODE CRIM. PROC. ANN. art. 38.072, § 2(b)(1)(C); *see Sanchez*, 354 S.W.3d at 484.   Another requirement is that "the trial court finds, in a hearing conducted outside the presence of the jury, that the statement is reliable based on the time, content, and circumstances of the statement."  TEX. CODE CRIM. PROC. ANN. art. 38.072, § 2(b)(2); *see Sanchez*, 354 S.W.3d at 484–85.  Salinas argues that these requirements were not satisfied in this case.  We address each requirement in turn.

### 1.  Written Summary

The State identified four potential outcry witnesses in its notice of intent to use an outcry statement. It stated that "[a] police report and/or other documentation containing the statements made to [three of the identified witnesses] are attached." Concerning the fourth potential outcry witness, forensic interviewer Alexis Harrison, the notice stated that a forensic interview containing the statements made to that witness was available for viewing.

Salinas objected at trial that the State did not provide a written summary of I.E.'s outcry statement to Harrison, but only made a videotape of her forensic interview available for him to watch. While this is what appears from the State's notice, an examination of the documents appended to that notice shows otherwise. In particular, the referenced police report contains an extensive summary of Harrison's November 30, 2017, forensic interview with I.E., which the officer who authored the report attended. This portion of the police report satisfies the statutory requirement of "a written summary of the statement." *See* TEX. CODE CRIM. PROC. ANN. art. 38.072, § 2(b)(1)(C).

### 2. Hearing on Reliability

Article 38.072 requires a trial court to find, "in a hearing conducted outside the presence of the jury," that an outcry statement is reliable. TEX. CODE CRIM. PROC. ANN. art. 38.072, § 2(b)(2). Salinas acknowledges that "[t]he court conducted a hearing concerning the state's intent to use Ms. Harrison as the outcry witness, and determined that she could testify." At the beginning of that hearing, the trial court stated, "And I know that Ms. [Harrison] is on time constraints, so let's boil this down just to the issue of outcry." Based on this comment, Salinas argues that the hearing proceeded solely on the issue of whether Harrison was the proper outcry witness and, as a result, there was no hearing on the reliability of the outcry statement. This

9

conclusion does not follow from the trial court's statement, though, because "the issue of outcry" would encompass both the identity of the proper outcry witness and the reliability of the outcry statement.

A court's assessment of the reliability of an outcry statement is based on "the time, content, and circumstances of the statement." TEX. CODE CRIM. PROC. ANN. art. 38.072, § 2(b)(2); *Carty v. State*, 178 S.W.3d 297, 306 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd). "The phrase 'time, content, and circumstances' refers to the time the child makes the statement to the proffered outcry witness, the content of the statement, and the circumstances surrounding the making of the statement." *Carty*, 178 S.W.3d at 306-307. The issue is whether the child's outcry statement is reliable, not whether the outcry witness is credible. *Buentello v. State*, 512 S.W.3d 508, 518 (Tex. App.—Houston [1st Dist.] 2016, pet. ref'd) (citing *Sanchez*, 354 S.W.3d at 487–88).

The hearing transcript reveals that Harrison gave testimony concerning the time and circumstances of I.E.'s outcry, including I.E.'s demeanor at the time. Harrison also testified in great detail about the content of I.E.'s statements to her. The trial court was therefore provided with the information it needed to assess the reliability of I.E.'s statement. *See Carty*, 178 S.W.3d at 306-307 (time, content, and circumstances). Indeed, Salinas does not identify any additional information that would bear on the reliability assessment, nor does he contend that I.E.'s outcry statement was not, in fact, reliable. His complaint that the trial court did not hold a hearing on the reliability of the outcry statement is not supported by the record.

### 3. Finding of Reliability

Salinas's next challenge to the admissibility of the outcry statement is that the trial court did not make an express finding that the statement was reliable. *See* TEX. CODE CRIM. PROC. ANN.

10

art. 38.072, § 2(b)(2).   But, while Article 38.072 requires that the trial court find that an outcry statement is reliable, the Texas Court of Criminal Appeals has held that an implied finding is sufficient to comply with that requirement.   *Villalon v. State*, 791 S.W.2d 130, 136 (Tex. Crim. App. 1990).   Such a finding may be implied if, after conducting a reliability hearing, the trial court overrules the defendant's objections to the outcry evidence and holds that the testimony is admissible.   *Gabriel v. State*, 973 S.W.2d 715, 718 (Tex. App.—Waco 1998, no pet.); *see In re K.L.*, 91 S.W.3d 1, 17 (Tex. App.—Fort Worth 2002, no pet.) (applying civil analog of article 38.071 and holding court implicitly found outcry statements reliable by admitting testimony on those statements).

The trial court in this case admitted evidence of I.E.'s outcry statement after conducting the requisite hearing.   The court's ruling that the outcry statement was admissible implies that it found the statement to be reliable and satisfies Article 38.072.[5]   *See Villalon*, 791 S.W.2d at 136; *Gabriel*, 973 S.W.2d at 718.

In sum, we conclude that the record demonstrates that the State gave Salinas a written summary of I.E.'s outcry statement, and that the trial court held a hearing on reliability and impliedly found the statement to be reliable.   Salinas's second issue is overruled.

### C. Proper Outcry Witness

In his third issue, Salinas asserts that the trial court erred in finding that Alexis Harrison was the proper outcry witness.   Again, we disagree.

Under Article 38.072, the proper outcry witness is the first adult, other than the defendant, to whom the child "made a statement about the offense." TEX. CODE CRIM. PROC. ANN. art. 38.072,

---

[5] We again note that Salinas does not contend that the outcry statement was, in fact, unreliable.

§ 2(a)(3).  The Court of Criminal Appeals has construed "statement about the offense" to mean "a statement that in some discernible manner describes the alleged offense." *Garcia v. State*, 792 S.W.2d 88, 91 (Tex. Crim. App. 1990).   It must be "more than a general allusion of sexual abuse." *Id.*  Consequently, the proper outcry witness is not the first adult to whom the child made any mention of the offense, but the first adult to whom the child related specific details concerning the offense.  *See Thomas v. State*, 309 S.W.3d 576, 579 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd); *Sims v. State*, 12 S.W.3d 499, 500 (Tex. App.—Dallas 1999, pet. ref'd); *see also*, *Hayden v. State*, 928 S.W.2d 229, 231 (Tex. App.—Houston [14th Dist.] 1996, pet. ref'd) ("[W]here the record is void of specific details of statements made by the complainant to an individual, such individual cannot be an outcry witness under article 38.072.") (citing *Garcia*, 792 S.W.2d at 91).

The child in *Thomas* first reported the defendant's sexual misconduct to her mother, but that report lacked specificity.  The child later gave her stepmother a detailed description of the alleged offense.  The trial court held that the child's stepmother was the proper outcry witness even though she was the second adult to whom the child spoke about the offense, and the appellate court affirmed.  *Thomas*, 309 S.W.3d at 579.

Similarly, the child in *Sims* spoke first to her mother about the defendant's sexual misconduct, but she did not provide specific details.  *Sims*, 12 S.W.3d at 500.  The child later spoke to a Family Services counselor, to whom she related specific details of the offense.  *Id.* The trial court held that the Family Services counselor was the proper outcry witness, and the appellate court affirmed.  *Id.*

The State identified four persons as possible outcry witnesses in its notice of intent to use an outcry statement: Maile McKinney, I.E.'s mother, Pam Simmons, and Alexis Harrison.

Salinas contends that "the statements to the mother and to the CPS worker seem to be the first outcry statements, the CPS statement being more detailed, as to where the child says she was touched." As Salinas does not make any argument concerning McKinney or Simmons, we need not discuss whether either of them was a proper outcry witness.

## 1. I.E.'s Statement to Her Mother

I.E.'s first report of sexual abuse occurred on November 22, 2017. I.E. told her friend that Salinas had been touching her inappropriately for a long time. The friend told her mother, who told I.E.'s mother. I.E. then told her mother that Salinas had been touching her inappropriately for a long time with his hands, his mouth, and his penis. I.E. did not say where Salinas had touched her. When her mother asked if she had had sex, she responded that she was still a virgin.

I.E. did not give her mother any specifics concerning the alleged sexual abuse. For example, she did not relate where or when the incidents occurred, or where on her body Salinas had been touching her. In addition, I.E.'s statement that Salinas had been touching her inappropriately "for a long time" is not sufficiently specific to describe the offense of continuous sexual abuse of a child under 14. *See* TEX. PENAL CODE ANN. § 21.02 (defining offense as committing two or more acts of sexual abuse against a child younger than 14 during a period that is 30 or more days in duration).

The circumstances of this case are similar to those presented in *Rodgers v. State*, 442 S.W.3d 547 (Tex. App.—Dallas 2014, pet. ref'd). In that case, the child told his mother that his uncle had been touching him "for a while." *Id.* at 548. He later gave a detailed statement to a forensic interviewer. The court of appeals noted that "[the child] made general allusions of abuse to his mother but it was not until he spoke to the forensic interviewer that he made all of his

13

allegations and it became clear the sexual abuse involved multiple incidents for a period of thirty days or more." *Id.* at 552.

The same is true in this case. I.E. made only general allusions of abuse to her mother, which were insufficient to describe the offense of continuous sexual abuse. *See Garcia*, 792 S.W.2d at 91 (statement must describe offense charged in discernable manner); *Rodgers*, 442 S.W.3d at 552 (same). The trial court did not abuse its discretion by concluding that I.E.'s mother was not the proper outcry witness.

### 2. I.E.'s Statement to a CPS Worker

A forensic interview request form from the Alliance for Children states that I.E. made an outcry to a CPS worker on November 22, 2017, the same date I.E. made a statement to her mother. The identity of the CPS worker is stated as unknown.[6] The only information concerning what I.E. said to the CPS worker is, "Miguel has sexually abused her by touching her 'private parts with his hands, mouth, and penis' for several years." This is essentially the same statement I.E. gave to her mother. It, too, is lacking in specific details concerning how, when, and where the alleged sexual abuse occurred.

The trial court could have reasonably determined that I.E.'s statement to the CPS worker, like her statement to her mother, was nothing more than a general allusion that something in the area of sexual abuse was occurring, not a clear description of the offense charged, as required by Article 38.072. *See Garcia*, 792 S.W.2d at 91; *Rodgers*, 442 S.W.3d at 552; *Sims*, 12 S.W.3d at

---

[6] Salinas contends that the CPS worker is "apparently" G. Stanford, based on the fact that a CPS investigator named G. Stanford was present in the monitoring room during I.E.'s interview with Harrison. But Stanford's mere presence in the monitoring room does not constitute any evidence that Stanford was the unknown CPS worker who previously spoke to I.E. In any event, the identity of the CPS worker is not necessary to our analysis.

500.

### 3. I.E.'s Statement to Forensic Interviewer Alexis Harrison

In contrast to the statements just discussed, I.E.'s statements to Harrison included numerous specific details regarding how, when, and where Salinas touched her. I.E. described how and where on her body Salinas touched her, what parts of his own body he touched her with, how it made her feel, where in the house the incidents occurred, when they occurred, and the circumstances surrounding them (such as waking her at night or touching her when no one else was home but stopping when it was about time for I.E.'s mother and brother to arrive home). Unlike I.E.'s statements to her mother and the CPS worker, her statements to Harrison clearly satisfied the statutory requirements. *See Garcia*, 792 S.W.2d at 91; *Sims*, 12 S.W.3d at 500. Accordingly, we conclude the trial court did not abuse its discretion by designating Harrison as the outcry witness. Salinas's third issue is overruled.

### III. CONCLUSION

We conclude that the trial court did not abuse its discretion by excluding evidence of specific events occurring on October 31, 2017, or by admitting the testimony of Alexis Harrison. The court satisfied the requirements of Article 38.072 by holding a hearing on the reliability of I.E.'s outcry statement, implicitly finding that statement to be reliable, and determining that Harrison was the proper outcry witness. The judgment of the trial court is affirmed.


GINA M. PALAFOX, Justice

February 10, 2020

Before Alley, C.J., Rodriguez, and Palafox, JJ.

(Do Not Publish)

15