**MODIFY and AFFIRM; and Opinion Filed December 14, 2016.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-15-01195-CR

**PORFIRIO ALVARADO, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 282nd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. F-1423628-S**

## MEMORANDUM OPINION
Before Justices Francis, Fillmore, and Stoddart
Opinion by Justice Fillmore

Appellant Porfirio Alvarado pleaded not guilty to aggravated sexual assault of a child.
*See* TEX. PENAL CODE ANN. §§ 22.021(a)(1)(B), (2)(B) (West Supp. 2016). The trial court found
Alvarado guilty and assessed punishment of twenty years' imprisonment. In a single issue,
Alvarado contends the trial court erred by overruling his hearsay objections to the testimony of
the outcry witness.[1] We modify the judgment by deleting the reference to "Open" in the "Terms
of Plea Bargain." As modified, we affirm the trial court's judgment.

---

[1] In his appellate brief, Alvarado raised a second issue: insufficiency of the evidence to prove the offense of aggravated sexual assault.
Alvarado argued the record contains insufficient evidence to prove he was not married to the alleged victim at the time of the alleged assault. *See*
TEX. PENAL CODE ANN. § 22.011(e)(1) (West 2011) (it is affirmative defense to prosecution under section 22.011(a)(2) that the actor was the
spouse of the child at the time of the offense); *Salinas v. State*, No. 13-11-00210-CR, 2013 WL 485805, at *1 (Tex. App.—Corpus Christi Feb. 7,
2013, pet. ref'd) (mem. op., not designated for publication) (penal code provides it is affirmative defense to both sexual assault of a child and
indecency with a child if the actor was the spouse of the child at the time of the act); *see also* TEX. PENAL CODE ANN. § 2.04(d) (West 2011) (if
issue of existence of affirmative defense is submitted to jury, court shall charge that defendant must prove affirmative defense by preponderance
of evidence). In his reply brief, Alvarado withdraws this issue. Therefore, we need not address it. *See* TEX. R. APP. P. 47.1.

## Background[2]

Alvarado was charged by indictment with intentionally and knowingly causing the sexual organ of L.S., a child younger than the age of fourteen who was not then his spouse, to contact his mouth. On August 11, 2015, the State filed a "Notice of Outcry Statement" and, pursuant to article 38.072 of the code of criminal procedure, notified Alvarado the State intended to offer an outcry statement through the testimony of "Bibianna Dominguez, a person 18 years of age or older, whom [sic] was the first person the witness, Minor [L.S.], made a statement concerning the offense." In that "Notice of Outcry Statement," the State provided a summary of that statement as follows:

> In a continuing course of conduct, [Alvarado] made contact with [L.S.]'s "middle part" (vagina) with [Alvarado]'s "thing" (penis), by "rubbing his penis around her crotch, his middle part touched hers."
> In a continuing course of conduct, [Alvarado] made contact with [L.S.]'s "middle part" (vagina) with [Alvarado]'s mouth, kissing her crotch and "sucked her middle part."

On the same day, the State also filed a "Notice of Motions Served to Defense Counsel" that included a reference to the "Notice of Outcry Statement" of "Bibianna Dominguez (of the Dallas Children's Advocacy Center)" that had been "submitted to Defense Counsel."

This case was tried before the court. Before testimony began at the guilt phase of the trial, the parties dispensed with a hearing regarding the identity of the outcry witness to testify at trial by announcing "on the record" their agreement as to the outcry witness:

> The Prosecutor: [The] State and defense have had a discussion and we're in agreement that the outcry [witness] for this case is Bibana Dominguez, the forensic interviewer over at Dallas County –
>
> Alvarado's Counsel: That's fine.

---

[2] Because Alvarado has not asserted the evidence is insufficient to support his conviction for aggravated sexual assault, we will recount the evidence and trial proceedings only where necessary to address his issue and to provide background for this appeal.

Rosa Huerta-Flores, L.S.'s mother, testified L.S. was eleven years old in March 2014. For a period of time, L.S. and her older sister, J.S., stayed at Alvarado's home for two or three hours after school while Huerta-Flores was working. Alvarado's sister-in-law, Maria Lisa Lopez, also lived at that home. In March 2014, Huerta-Flores learned from L.S. that Alvarado had been sexually abusing her. L.S. initially provided Huerta-Flores with few details of the abuse; as days passed, L.S. told Huerta-Flores "more things." Huerta-Flores spoke with Lopez about what L.S. had told her, and Lopez advised her to contact the police. After the police were contacted, L.S. began to receive therapy. L.S. was in therapy for about a year.

L.S. testified that while their mother was at work, she and J.S. went to Alvarado and Lopez's home after school. Alvarado, a longtime friend of her mother's, was like an uncle to her. In March 2014, Alvarado made L.S. feel uncomfortable around him when he touched her on her legs. L.S. also remembered that Alvarado licked and touched her "private part." Alvarado would pull L.S.'s pants or shorts down. L.S. recalled Alvarado only touched the outside of her "private part." Alvarado put his mouth on L.S.'s "private part" more than one time. These incidents occurred in Alvarado's bedroom. L.S. testified the day Alvarado licked her "middle part," he showed her his "middle part" and "some condoms." Alvarado wanted L.S. to touch his "middle part," but she would not. L.S. also testified Alvarado had put his "middle part" on her "middle part." The incident when Alvarado tried to make her touch his "middle part" occurred in the living room of Alvarado's home. L.S. testified she thought Alvarado did inappropriate things to her three or four different times. L.S. testified that sometimes J.S. would arrive at Alvarado's home after L.S., and Alvarado would stop what he was doing to her when he heard J.S. coming. L.S. identified a drawing she made on June 3, 2014, showing illustrations of her saying she wanted to go home and, "Stop. Please. I'm going to tell my mom!" L.S. testified those were things she would say to Alvarado when he was doing inappropriate things to her.

L.S. testified she initially did not want to tell Huerta-Flores about the sexual abuse because of her mother's friendship with Alvarado. However, L.S. eventually told Huerta-Flores that Alvarado pulled her pants down and started putting his mouth on her "middle part." About four days later, Huerta-Flores telephoned the police, who then took L.S. to the Dallas Children's Advocacy Center to speak with Dominguez. L.S. told Dominguez "all the things that had happened between [her] and [Alvarado]," and "more than [she] told [her] mom." A few days after L.S. spoke with Dominguez, a police detective spoke with Huerta-Flores, and L.S. began to attend therapy sessions with Karen Esposito.[3] The drawing about which L.S. testified was made during therapy with Esposito.

Dominguez, a forensic interviewer with the Dallas Children's Advocacy Center, testified that during her forensic interview of L.S. on March 19, 2014, L.S. made an outcry of abuse, naming Alvarado as the abuser and providing details of the abuse. The trial court overruled Alvarado's hearsay objection to Dominguez testifying about what L.S. told her concerning sensory details of the abuse. Dominguez then testified without further objection that L.S. provided sensory details of what the sexual abuse felt like. L.S. indicated the first incident of abuse occurred on March 6, 2014, and identified on anatomical drawings what she meant by her "middle part" and Alvarado's "middle part."

When Dominguez was asked what L.S. said about the abuse, Alvarado's counsel raised a hearsay objection concerning the "outcry exception to the hearsay rule," based on his mistaken belief that the State's notice regarding the outcry witness had not been filed fourteen days prior to trial as required by article 38.072 of the code of criminal procedure.[4] The trial court noted the

---

[3] Esposito, a therapist at Dallas Children's Advocacy Center, first saw L.S. in therapy on March 24, 2014, after receiving a referral for a case of sexual abuse. L.S. presented with some symptoms of post-traumatic stress disorder; she knew why she was in therapy and stated to Esposito that something had happened to her. Esposito saw L.S. in therapy a total of thirty-two times.

[4] Section 2(b) of article 38.072 of the code of criminal procedure provides:

August 11, 2015 filing of the notice more than fourteen days prior to the September 2015 trial, and Alvarado's counsel acknowledged his mistake regarding the date the notice was filed. Alvarado's counsel then stated that "either way," Alvarado "still object[ed] to hearsay." The trial overruled the hearsay objection.

Dominguez then continued her testimony without objection regarding the incidents described to her by L.S. of alleged sexual abuse by Alvarado that occurred on March 6, 2014, and a date after March 6, 2014. L.S. told Dominguez that on March 6, 2014, when she arrived at Alvarado's home after school, he told her he wanted to kiss her. L.S. told Alvarado she did not want to kiss him. Alvarado pulled L.S.'s pants and underwear down and began to "suck her middle part." That same day, he asked L.S. to touch his "middle part," but she refused. L.S. also told Dominguez of another incident after March 6, 2014, when in Alvarado's bedroom, he pulled her pants down, laid her on the bed, and touched L.S.'s "middle part" with his "middle part."

Steve Matlick, an officer with the Garland Police Department, testified regarding his assistance with a March 28, 2014 police interview of Alvarado. In that interview, Alvarado admitted he caused his mouth to make contact with L.S.'s sexual organ.

The trial court convicted Alvarado of aggravated sexual assault of a child under the age of fourteen and sentenced him to twenty years' imprisonment. Alvarado filed this appeal.

---

A statement that meets the requirements of Subsection (a) is not inadmissible because of the hearsay rule if:

(1) on or before the 14th day before the date the proceeding begins, the party intending to offer the statement:

    (A) notifies the adverse party of its intention to do so;
    (B) provides the adverse party with the name of the witness through whom it intends to offer the statement; and
    (C) provides the adverse party with a written summary of the statement;

(2) the trial court finds, in a hearing conducted outside the presence of the jury, that the statement is reliable based on the time, content, and circumstances of the statement; and

(3) the child or person with a disability testifies or is available to testify at the proceeding in court or in any other manner provided by law.

TEX. CODE CRIM. PROC. ANN. art. 38.072, § 2(b) (West Supp. 2016).

**Outcry Witness**

In his sole issue pursued on appeal, Alvarado contends the trial court erred by admitting the testimony of the outcry witness, Bibana Dominguez, during the guilt phase of trial because she did not meet one of the hearsay exceptions of article 38.072 of the code of criminal procedure. *See* TEX. CODE CRIM. PROC. ANN. art. 38.072, § 2(a). In support of this issue, Alvarado argues: (1) Dominguez was not the first person over eighteen years of age to whom L.S. gave a statement of the alleged sexual abuse that was more than a general allusion to sexual abuse; (2) the State did not give notice Dominguez would testify as an outcry witness; and (3) Dominguez did not qualify as a proper outcry witness because there was no evidence she was over the age of eighteen years of age at the time of L.S.'s outcry statement.

*Applicable Law and Standard of Review*

Article 38.072 of the code of criminal procedure allows the admission of a hearsay statement made to an outcry witness[5] by certain abuse victims, including child victims of sexual abuse. *See* TEX. CODE CRIM. PROC. ANN. art. 38.072.[6] In child sexual abuse cases,

---

[5] "Though the terms do not appear in the statute, the victim's out-of-court statement is commonly known as an 'outcry,' and an adult who testifies about the outcry is commonly known as an 'outcry witness.'" *Sanchez v. State*, 354 S.W.3d 476, 484 (Tex. Crim. App. 2011).

[6] In pertinent part, article 38.072 provides:

Sec. 1. This article applies to a proceeding in the prosecution of an offense under any of the following provisions of the Penal Code, if committed against a child younger than 14 years of age or a person with a disability:

(1) Chapter 21 (Sexual Offenses) or 22 (Assaultive Offenses)[.]

* * *

Sec. 2. (a) This article applies only to statements that:

(1) describe:
(A) the alleged offense;

* * *

(2) were made by the child or person with a disability against whom the charged offense or extraneous crime, wrong, or act was allegedly committed; and

(3) were made to the first person, 18 years of age or older, other than the defendant, to whom the child or person with a disability made a statement about the offense or extraneous crime, wrong, or act.

TEX. CODE CRIM. PROC. ANN. art. 38.072, §§ 1, 2(a).

designation of a person as an outcry witness allows the person to testify concerning the child's otherwise inadmissible hearsay or out-of-court statements describing the abuse. *See id.*[7] For the outcry statement to be admissible, the witness must be the first adult to whom the child made a statement about the offense. *See* TEX. CODE CRIM. PROC. ANN. art. 38.072, § 2; *see Bays v. State*, 396 S.W.3d 580, 585 (Tex. Crim. App. 2013) ("outcry statute," contained in article 38.072 of the code of criminal procedure, "creates a hearsay exception for a child-complainant's out-of-court 'statements' that 'describe the alleged offense,' so long as those statements were made 'to the first [adult] person . . . to whom the child . . . made a statement about the offense'") (quoting TEX. CODE CRIM. PROC. ANN. art. 38.072, § 2(a)(1)–(3)); *Lopez v. State*, 343 S.W.3d 137, 140 (Tex. Crim. App. 2011) (outcry witness is first person over age of eighteen, other than defendant, to whom child spoke about the offense). To qualify as a proper outcry statement, the child must have described the alleged offense in some discernible manner that is "event-specific rather than person-specific," and must be "more than words which give a general allusion that something in the area of child abuse is going on." *Lopez*, 343 S.W.3d at 140 (citing *Garcia v. State*, 792 S.W.2d 88, 91 (Tex. Crim. App. 1990)).

The trial court's outcry witness determination, and resulting admission of hearsay testimony, is reviewed for an abuse of discretion. *Rodgers v. State*, 442 S.W.3d 547, 552 (Tex. App.—Dallas 2014, pet. ref'd); *Robinett v. State*, 383 S.W.3d 758, 761 (Tex. App.—Amarillo 2012, no pet.). A trial court has broad discretion in determining the admissibility of outcry evidence, and its determination as to the proper outcry witness will not be disturbed absent a showing in the record that the trial court clearly abused its discretion. *Garcia*, 792 S.W.2d at 92.

---

[7] *See Zuniga v. State*, No. 05-14-00078-CR, 2015 WL 3555499, at *1 (Tex. App.—Dallas June 5, 2015, no pet.) (mem. op., not designated for publication).

A trial court does not abuse its discretion if its decision is within the zone of reasonable disagreement. *See Walters v. State*, 247 S.W.3d 204, 217 (Tex. Crim. App. 2007).

*Discussion*

Alvarado contends Huerta-Flores, rather than Dominguez, was the proper outcry witness because she was the first person over the age of eighteen to whom L.S. made an outcry statement.[8]  Although the State provided Alvarado notice before trial of several potential outcry witnesses, including Huerta-Flores, at the time of trial, the State and Alvarado agreed Dominguez would be designated the outcry witness.  Despite Alvarado's agreement on the record that Dominguez would be the outcry witness, he objected to Dominguez's testimony as to what L.S. told her about the abuse as hearsay and argues on appeal that Huerta-Flores was the outcry witness and, therefore, the trial court erred by admitting Dominguez's hearsay testimony.

At trial, Huerta-Flores testified that in March 2014, she learned Alvarado had been sexually abusing L.S.  About fifteen days after Alvarado sexually abused her, L.S. told Huerta-Flores she had been sexually abused by Alvarado but provided few details of the abuse.  According to Huerta-Flores, as days passed, L.S. told her "more things," but Huerta-Flores was not asked on direct or cross-examination to describe the additional information provided by L.S. or whether the additional information was communicated to her before L.S. spoke with Dominguez.  According to L.S.'s testimony, she initially did not want to tell Huerta-Flores about the sexual abuse because of Huerta-Flores's friendship with Alvarado, but she eventually told Huerta-Flores that Alvarado got her pants down and started putting his mouth on her "middle part."  After that, she spoke with Dominguez at Dallas Children's Advocacy Center and told Dominguez "all the things that happened between [her] and [Alvarado]."

---

[8] *See* TEX. CODE CRIM. PROC. ANN. art. 38.072, § 2(a)(3).

Dominguez testified regarding L.S.'s outcry of sexual abuse on March 19, 2014, in which L.S. provided details of the abuse. Dominguez then testified that L.S. gave sensory details of what the sexual abuse felt like. L.S. indicated the first incident of abuse occurred on March 6, 2014. L.S. told Dominguez that on March 6, 2014, Alvarado pulled her pants and underwear down and began to "suck her middle part." That same day, he asked L.S. to touch his "middle part," but she refused. L.S. also told Dominguez of another incident after March 6, 2014, when in Alvarado's bedroom, he pulled her pants down, laid her on the bed, and touched L.S.'s "middle part" with his "middle part." During the forensic interview, L.S. identified on anatomical drawings what she meant by her "middle part" and Alvarado's "middle part."

The facts of this case are similar to the facts presented in *Sims v. State*, 12 S.W.3d 499 (Tex. App.—Dallas 1999, pet. ref'd). In *Sims*, a child told her mother that the defendant had "touched her private parts." *Id*. at 500. The record failed to show the "extent of the child's conversation with her mother" or that the child disclosed to her mother any specific details of the alleged abuse. *Id*. The child later told a counselor specific details describing the offense. *Id*. This Court held that the trial court did not abuse its discretion in determining the counselor was the proper outcry witness, explaining:

> The trial court could have reasonably determined that the complainant's statement to her mother was nothing more than a general allusion that something in the area of sexual abuse was occurring and was not a clear description of the offense charged as required by article 38.072.

*Id*. at 500; *see also Castelan v. State*, 54 S.W.3d 469, 475–76 (Tex. App.—Corpus Christi 2001, no pet.) (where child had told grandmother the defendant had "put his thing in through the back" and later made statement describing the incidents of alleged abuse in "great detail" to school counselor, court of appeals affirmed trial court's ruling the school counselor was proper outcry witness).

Here, in addition to trial counsel's agreement on the record that Dominguez was the proper outcry witness, the trial court reasonably could have determined that the information L.S. communicated to Huerta-Flores was "nothing more than a general allusion that something in the area of sexual abuse was occurring and not a clear description of the offense charged as required by article 38.072." *Sims*, 12 S.W.3d at 500. The record fails to show the extent of L.S.'s conversations with Huerta-Flores, that L.S. disclosed to Huerta-Flores the specific details of the alleged abuse later revealed by L.S. to Dominguez, or even when L.S. told Huerta-Flores "more things" regarding the sexual abuse. *See id.* The record demonstrates L.S. provided Dominguez specific details regarding how, when, and where appellant inappropriately touched her. We conclude the trial court's exercise of its broad discretion in admitting Dominguez's testimony as the outcry witness falls within the zone of reasonable disagreement, and accordingly, the trial court did not abuse its discretion by admitting Dominguez's outcry witness testimony. *See id.*

Alvarado also argues the trial court abused its discretion by admitting Dominguez's outcry testimony because the State did not provide notice "Bibana" Dominguez would testify as an outcry witness, *see* TEX. CODE CRIM. PROC. ANN. art. 38.072, § 2(b)(1)(B), and Dominguez did not qualify as a proper outcry witness under article 38.072 because there was no evidence she was over the age of eighteen at the time she interviewed L.S. in March 2014. *See* TEX. CODE CRIM. PROC. ANN. art. 38.072, § 2(a)(3). Alvarado failed to raise these complaints in the trial court. To preserve a complaint for appellate review, the record must show a specific and timely complaint was made in the trial court and the trial court ruled on the complaint. *Clark v. State*, 365 S.W.3d 333, 339 (Tex. Crim. App. 2012); *see also* TEX. R. APP. P. 33.1(a). Alavarao has failed to preserve these arguments for our review on appeal.[9]

---

[9] Even if Alvarado had preserved these complaints for appellate review, they are without merit. The record contains the State's August 11, 2015, "Notice of Outcry Statement," providing that the State intended to offer an outcry statement through the testimony of "Bibianna Dominguez." The record also contains the State's August 11, 2015, "Notice of Motions Served to Defense Counsel" which provides that the

We conclude the trial court did not abuse its discretion in permitting Dominguez to testify as the outcry witness. We resolve Alvarado's sole issue argued on appeal against him.

## Reformation of the Judgment

We may modify a trial court's judgment to correct a clerical error when we have the necessary information before us to do so. *See* TEX. R. APP. P. 43.2(b); *Asberry v. State*, 813 S.W.2d 526, 529–30 (Tex. App.—Dallas 1991, pet. ref'd). Our review of the record confirms that Alvarado pleaded not guilty to the charge of aggravated sexual assault of a child. Therefore, the judgment reflecting the "Terms of Plea Bargain" as "OPEN" is inaccurate, as there was no plea bargain by Alvarado. Accordingly, the judgment is modified by deleting the reference to "Open" in the "Terms of Plea Bargain."

---

"Notice of Outcry Statement" of "Bibianna Dominguez (of the Dallas Children's Advocacy Center)" had been "submitted to Defense Counsel," and the State's "Response to Defendant's Motion to List Witness [sic]" in which the State "announce[d] to the Court prior to commencement of testimony that the State may call" as a witness "Bibana Dominguez - Forensic Interviewer." The record reflects the reference to "Bibianna" was a misspelling of "Bibana," Dominguez's first name. The record belies any argument that Alvarado was not aware "Bibianna" and "Bibana" Dominguez were, in fact, the same person, as underscored by the agreement of the parties announced on the record that "Bibana Dominguez, the forensic interviewer" was designated as the outcry witness and Alvarado's counsel's reference to the State's "Notice of Outcry Witness" in argument relating to his hearsay objection to Dominguez's testimony. Further, there was no other witness who testified at trial or whom the State attempted to call as a witness at trial with a name remotely resembling that of "Bibana" Dominguez in either pronunciation or spelling. *See Martin v. State*, 541 S.W.2d 605, 607–08 (Tex. Crim. App. 1976) ("[W]e will therefore refrain from disturbing on appeal a jury or trial court determination that names in question are idem sonans unless evidence shows that the names are patently incapable of being sounded the same or that the accused was misled to his prejudice."). Moreover, the context of Dominguez's testimony as the forensic interviewer of L.S. at the Dallas Children's Advocacy Center demonstrates Dominguez received notice through the State's "Notice of Outcry Witness," "Notice of Motions Served to Defense Counsel," and "Response to Defendant's Motion to List Witness [sic]" that "Bibianna" and "Bibana" Dominguez were the same individual.

In her testimony at the September 2015 trial, Dominguez stated that after graduating from college in 2008, she had worked as an investigator for Child Protective Services for five years and as a forensic interviewer with Dallas Children's Advocacy Center for a year and a half. The evidence before the trial judge establishes Dominguez was over the age of eighteen at the time of the forensic interview of L.S. in March 2014. *See Wimer v. State*, No. 04-02-00557-CR, 2003 WL 22903011, at *2 (Tex. App.—San Antonio Dec. 10, 2003, pet. ref'd) (mem. op, not designated for publication) (evidence before trial judge clearly established the outcry witness testifying on each charge was over the age of eighteen; when trial court explicitly qualified the witness as an outcry witness, it implicitly recognized the witness was more than eighteen years old).

–11–

**Conclusion**

The judgment is modified by deleting the reference to "Open" in the "Terms of Plea Bargain." As modified, the judgment is affirmed.


/Robert M. Fillmore/
ROBERT M. FILLMORE
JUSTICE


Do Not Publish
TEX. R. APP. P. 47.2(b)

151195F.U05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

PORFIRIO ALVARADO, Appellant

No. 05-15-01195-CR            V.

THE STATE OF TEXAS, Appellee

On Appeal from the 282nd Judicial District Court, Dallas County, Texas,
Trial Court Cause No. F-1423628-S.
Opinion delivered by Justice Fillmore, Justices Francis and Stoddart participating.

Based on the Court's opinion of this date, the judgment of the trial court is **MODIFIED** by deleting the reference to "Open" in the "Terms of Plea Bargain."

As **MODIFIED** the judgment is **AFFIRMED**.

Judgment entered this 14th day of December, 2016.