**Affirmed and Opinion Filed March 25, 2021**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-19-01491-CR**
**No. 05-19-01494-CR**

**JESUS MEJIA, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 416th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 296-82738-2017, Counts I, II, III, and IV**

## MEMORANDUM OPINION

Before Justices Schenck, Osborne, and Partida-Kipness
Opinion by Justice Partida-Kipness

Jesus Mejia appeals his convictions on two counts of aggravated sexual assault of a child under six and two counts of indecency with a child by contact. The complainant is Mejia's daughter, C.M. In a single issue on appeal, Mejia contends the trial court abused its discretion by allowing the forensic interviewer to testify as the outcry witness for one incident of abuse that C.M. first disclosed to her mother. Mejia maintains that the proper outcry witness for that incident was C.M.'s mother. Finding no abuse of discretion, we affirm the trial court's judgment.

## BACKGROUND

Mejia and C.M.'s mother, L.B., were never married. They split up when C.M. was about six months old. Mejia and L.B. reached an agreement on child support and custody when C.M. was almost a year old. Under that agreement, C.M. lived with her mother but spent one day a week, every other weekend, and alternating holidays with Mejia. At the time, Mejia lived with his mother and father.

On May 18, 2017, when C.M. was ten years old, she told her mother and stepfather that she did not want to go to Mejia's house for a scheduled visit, but she was embarrassed to say why. After further urging by her mother, C.M. told her that "her dad would make her touch his boy parts." C.M. then described one time when she told Mejia she did not want to touch him, but he told her to go get some lotion and come back. When she did, Mejia put the lotion on C.M.'s hands and made her touch his "boy parts." L.B. and her husband called 911 and reported the abuse. C.M. testified at trial that she explained to her mother and stepfather that Mejia "did something wrong" to her, but her mother and stepfather called the police "before I got to any detail. . . ." C.M. was three or four years old when the event with the lotion occurred.

Forensic interviewer McKenzie McIntosh interviewed C.M. at the Collin County Children's Advocacy Center on May 19, 2017. During the interview, C.M. told McIntosh about several acts of sexual abuse by Mejia, including the incident where Mejia put lotion on C.M.'s hands and made her rub the lotion on his penis.

The State provided Mejia with notice of two outcry witnesses; L.B. and McIntosh. Before trial, Mejia's defense counsel requested a hearing to determine the outcry witness for each offense. At the outcry hearing, L.B. testified that C.M. told her the following on May 18, 2017:

> And so she said that her dad would make her touch his boy parts. And that one time he tried to get her to touch his boy parts and she told him no, and she wanted to go check on some soup that was being made. And he told her, no, to go to the dresser and get some lotion and come back, so she did. And he put it on her hands and he made her touch his boy parts.

C.M. also told L.B. about an incident in which Mejia had her eat candy while blindfolded and on her knees. When she took the blindfold off, Mejia was "putting himself up and laughing at her." Finally, C.M. told her mother that Mejia would rub her back, move down to her butt, and touch himself.

At the outcry hearing, McIntosh testified that C.M. disclosed six abusive events to her. The first event was actually comprised of three separate abusive acts occurring the same day when C.M. was three or four years old. One of those acts was Mejia putting lotion on C.M. hands and making her rub the lotion on his penis. C.M. provided more detail regarding the lotion incident to McIntosh than she had disclosed to her mother and also described two acts of abuse that occurred before and after Mejia made her touch his penis. Specifically, C.M. told McIntosh that the first event happened when she was three or four years old while visiting her dad at

her Nanna's[1] house in McKinney. McIntosh told the court that C.M. disclosed that she and Mejia were under the covers in Mejia's bed when Mejia told C.M. to open her mouth. She said no, but Mejia forced her to open her mouth and then put his penis in her mouth. C.M. told McIntosh that Mejia kept his penis in her mouth for a long time. She also said his penis "tasted like it was oily and like pee, she could smell the pee from it." Mejia was smiling and laughing when he did this.

Then, Mejia told C.M. to grab the lotion. C.M. got the lotion and brought it to Mejia. McIntosh testified that C.M. told McIntosh that Mejia put the lotion on her hand and told her to rub it on his penis. Mejia then showed C.M. how to rub the lotion on his penis. C.M. also explained to McIntosh how Mejia wiped his penis off with a towel and then wiped her hands. C.M. then left the room to get a drink and came back with licorice from her Nanna, who was cooking in the kitchen. C.M. told McIntosh that Mejia blindfolded C.M. and then put his penis in her mouth. C.M. knew it was his penis even though she was blindfolded "because it smelled and tasted the same as it did before and it felt the same as when it was under the covers." Mejia would then put the licorice in her mouth and say, "Is this it?" McIntosh explained C.M.'s description of this event as follows: "So while he was putting his private in he was asking, is this it, talking about the licorice, and then put the licorice in her mouth and say, or is this it?" C.M. told McIntosh that Mejia's penis "felt like a big

---

[1] At trial, C.M. referred to Mejia's mother as Nanna and granny. During the forensic interview, however, she referred to her as Nanna. We will refer to Mejia's mother as C.M.'s "Nanna" for clarity.

–4–

sausage in her mouth" and that there was a lot of hair on Mejia's penis. She also described how the hair laid down when she put the lotion on the penis.

McIntosh went on to describe five other abusive events disclosed by C.M. C.M. told McIntosh that the next event happened the next day when her Nanna went to the store. C.M. was sitting on Mejia's lap on the couch and he was thrusting his hips "like he was sitting on something." C.M. could feel that his zipper was down and his penis was on her butt, inside her leggings. C.M. told McIntosh that she could feel Mejia's penis "by her butthole like he was trying to get something out and she could feel the hair in there." C.M. also said that when Mejia's penis was on her leggings, "it felt really warm" and she could feel something wet on her leggings "like when you slide down a slide and there's water at the end of it." She described the penis as feeling like "a big snake or a stick or something like that on her bottom."

McIntosh further testified that C.M. told her about an incident where she and Mejia were laying in Mejia's bed at her Nanna's house, and Mejia touched C.M.'s private part over her clothes. According to McIntosh, C.M. described the act as Mejia squeezing her private parts; "it was like a squeezing motion on the cushions of the female sexual organ." C.M. also told McIntosh about Mejia patting her butt and described an incident in which Mejia kissed C.M. and she could feel his teeth in her mouth. Finally, McIntosh testified that C.M. disclosed another time when she was sleeping and she felt his penis on her butt, on the outside of her clothing. C.M. said

she was confused and did not know what happened. But Mejia's penis "felt like a big snake or a stick or something like that" on her butt.

At the end of the hearing, the trial court ruled that C.M.'s mother would be the outcry witness for the fifth incident described by McIntosh, which was Mejia patting C.M. on her butt and back. The trial court further ruled that McIntosh would be the outcry witness for the other incidents. Mejia objected based on hearsay and the confrontation clause, and the trial court overruled the objections. On appeal, Mejia complains only that McIntosh was permitted to testify as the outcry witness regarding the event involving Mejia instructing C.M. to rub lotion on his penis. Mejia does not complain that McIntosh testified as the outcry witness regarding any other abusive event.

At trial, the only event of abuse L.B. testified to was C.M.'s allegation that Mejia had recently rubbed her back and touched her butt when she laid down, and that C.M. did not like it. McIntosh testified at trial regarding the other abusive events described to her by C.M. during the forensic interview.

C.M. also testified at trial. During her testimony, C.M. recounted and described four of the events that McIntosh described. Her description of those events was consistent with McIntosh's testimony at the outcry hearing and during trial. Regarding the first event, she described three abusive acts occurring the same day just as McIntosh had described. Those acts began with Mejia forcing her to open her mouth under the covers and putting his penis in her mouth. Then Mejia told C.M.

–6–

"to go get the lotion off of his dresser." C.M. testified that when she brought the lotion to Mejia, he put some lotion on his penis and then he told C.M. to use her hands "to go up and down with it rubbing on his private part." As for the third act that day, C.M. explained that after she rubbed lotion on Mejia's penis, she went to the kitchen and got red Twizzler candy from her Nanna. C.M. went back into Mejia's bedroom with the Twizzler, and Mejia blindfolded her. Mejia then began alternating putting his penis in her mouth with putting the Twizzler in her mouth and asking, "Is this it? Is this it?"

The jury convicted Mejia on two counts of aggravated sexual assault of a child under six and two counts of indecency with a child by contact. The jury then sentenced him to fifty years' confinement and a $10,000 fine on both aggravated sexual assault convictions and ten years' confinement and a $5,000 fine for both indecency with a child by contact convictions. This appeal followed.

## STANDARD OF REVIEW

The trial court has broad discretion to determine which of several witnesses is an outcry witness. *Martinez v. State*, No. 05-18-01096-CR, 2020 WL 897247, at *2 (Tex. App.—Dallas Feb. 25, 2020, no pet.) (mem. op., not designated for publication); *Chapman v. State*, 150 S.W.3d 809, 812–13 (Tex. App.—Houston [14th Dist.] 2004, pet. ref'd). We review a trial court's designation of an outcry witness under an abuse of discretion standard. *Martinez*, 2020 WL 897247, at *2 (citing *Garcia v. State*, 792 S.W.2d 88, 92 (Tex. Crim. App. 1990)). A trial court

–7–

abuses its discretion when its ruling is outside the zone of reasonable disagreement. *Walters v. State*, 247 S.W.3d 204, 217 (Tex. Crim. App. 2007). We will not disturb a trial court's designation of an outcry witness if it is supported by the evidence. *Martinez*, 2020 WL 897247, at *2 (citing *Garcia*, 792 S.W.2d at 92).

## ANALYSIS

In a single issue, Mejia complains that the trial court abused its discretion by allowing McIntosh to testify as the outcry witness regarding the event in which Mejia made C.M. rub lotion on Mejia's penis. Mejia contends McIntosh should not have been permitted to testify regarding that event because C.M.'s mother was the first person to whom C.M. made an outcry statement about that event. We disagree.

Article 38.072 of the Texas Code of Criminal Procedure allows the admission of a hearsay statement describing sexual abuse made by a child abuse victim to an outcry witness. TEX. CODE CRIM. PROC. art. 38.072. For the outcry statement to be admissible, the witness must be the first person over the age of eighteen to whom the child made a statement about the offense. *Id.* § 2(a)(3); *Bays v. State*, 396 S.W.3d 580, 585 (Tex. Crim. App. 2013). The statement must describe the alleged offense "in some discernible manner" and must be more than "a general allusion that something in the area of child abuse was going on." *Garcia*, 792 S.W.2d at 91. In general, the proper outcry witness is the first adult to whom the child abuse victim describes "how, when, and where" the abuse occurred. *Reyes v. State*, 274 S.W.3d 724, 727 (Tex. App.—San Antonio 2008, pet. ref'd). If the child makes only a

general allusion to the first adult and gives a more detailed account to a second adult, however, the second adult may be the proper outcry witness. *Sims v. State*, 12 S.W.3d 499, 500–01 (Tex. App.—Dallas 1999, pet. ref'd).

Here, although C.M. first told her mother that Mejia made her touch his "boy parts" and rub lotion on his "boy parts" when she was three or four years old, C.M. provided greater detail about that abusive event to McIntosh during the forensic interview. The trial court could have reasonably determined that C.M.'s statement to her mother was nothing more than a general allusion that something in the area of sexual abuse was occurring and not a clear description of the offense charged as required by article 38.072. *See Sims*, 12 S.W.3d at 500–01 (trial court could have reasonably determined complainant's statement to her mother that she did not want to go to appellant's house because he had "touched her private parts" was nothing more than a general allusion that something in the area of sexual abuse was occurring). C.M.'s statements to McIntosh regarding how, when, and where Mejia made her rub lotion on his penis, in contrast, clearly satisfied the statutory requirements. *See id.* Further, C.M. did not tell her mother about the forced acts of oral sex that occurred before and after she was forced to rub lotion on Mejia's penis. Allowing McIntosh to testify as the outcry witness regarding the lotion incident, therefore, placed that incident in the proper context for the jury.

On this record, it would not be outside the zone of reasonable disagreement for the trial court to find that McIntosh, rather than C.M.'s mother, was the first adult

to whom C.M. described in a discernable manner the act in which Mejia made C.M. rub lotion on his penis with her hands. Therefore, we cannot conclude the trial court abused its discretion by designating McIntosh as the outcry witness under article 38.072 regarding the lotion incident and admitting her testimony at trial. *See Rogers v. State*, 442 S.W.3d 547, 552 (Tex. App.—Dallas 2014, pet. ref'd) (trial court did not err by designating forensic interviewer and not mother as outcry witness when "[child victim] made general allusions of abuse to his mother but it was not until he spoke to the forensic interviewer that he made all of his allegations and it became clear the sexual abuse involved multiple incidents"); *Sims*, 12 S.W.3d at 500 (no abuse of discretion for trial court to designate second adult as outcry witness where child victim's statement to her mother was not a clear description of the offense charged but disclosure to second adult described how, when, and where appellant touched the child); *Martinez*, 2020 WL 897247, at *4–5 (no abuse of discretion to name forensic interviewer outcry witness where complainant provided interviewer unique and specific information about the sexual abuse, whereas initial outcry to complainant's mother lacked details as to the manner and means of the sexual abuse). Accordingly, we conclude the trial court did not abuse its discretion in designating McIntosh as the outcry witness regarding the lotion incident.

Moreover, any alleged error in allowing McIntosh to testify to the lotion event was harmless because C.M. provided detailed testimony at trial about that event that was consistent with McIntosh's testimony. "The erroneous admission of evidence is

non-constitutional error." *Gonzalez v. State*, 544 S.W.3d 363, 373 (Tex. Crim. App. 2018) (citing *Taylor v. State*, 268 S.W.3d 571, 592 (Tex. Crim. App. 2008)). "Non-constitutional errors are harmful, and thus require reversal, only if they affect Appellant's substantial rights." *Id.* (citing TEX. R. APP. P. 44.2(b)). The Court of Criminal Appeals has construed this to mean that "an error is reversible only when it has a substantial and injurious effect or influence in determining the jury's verdict." *Taylor*, 268 S.W.3d at 592. "If we have a fair assurance from an examination of the record as a whole that the error did not influence the jury, or had but a slight effect, we will not overturn the conviction." *Gonzalez*, 544 S.W.3d at 373. In cases involving the improper admission of outcry testimony, the error is harmless when the victim testifies in court to the same or similar statements that were improperly admitted or other evidence setting forth the same facts is admitted without objection. *Gibson v. State*, 595 S.W.3d 321, 327 (Tex. App.—Austin 2020, no pet.) (citing cases).

Here, C.M.'s testimony regarding the lotion incident was consistent with McIntosh's testimony regarding the same event. On this record, we have fair assurance that the district court's error in admitting the testimony of multiple outcry witnesses did not have a substantial and injurious effect on the jury's verdict.

Because the trial court did not abuse its discretion and any alleged error was harmless, we overrule Mejia's sole appellate issue.

## CONCLUSION

The trial court did not abuse its discretion by allowing the forensic interviewer to testify as an outcry witness regarding the lotion incident, and any alleged error was harmless. Accordingly, we overrule Mejia's sole issue and affirm the trial court's judgment.

/Robbie Partida-Kipness/
ROBBIE PARTIDA-KIPNESS
JUSTICE

Do Not Publish.
TEX. R. APP. P. 47.2(b).
191491F.U05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

JESUS MEJIA, Appellant

No. 05-19-01491-CR          V.

THE STATE OF TEXAS, Appellee

On Appeal from the 416th Judicial District Court, Collin County, Texas Trial Court Cause No. 296-82738-2017, Counts I and II.
Opinion delivered by Justice Partida-Kipness. Justices Schenck and Osborne participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 25th day of March, 2021.



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

JESUS MEJIA, Appellant

No. 05-19-01494-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 416th Judicial District Court, Collin County, Texas Trial Court Cause No. 296-82738-2017, Counts III and IV.
Opinion delivered by Justice Partida-Kipness. Justices Schenck and Osborne participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 25th day of March, 2021.