Affirmed and Opinion filed March 1, 2007








Affirmed and Opinion filed March 1, 2007.

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-05-00536-CR

____________

 

RICKY L. GANDY, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 176th
District Court

Harris County, Texas

Trial Court Cause No. 992179

 



 

O P I N I O N








Appellant, Ricky L. Gandy, was charged by indictment with
illegal dumping.[1] 
The indictment also contained an enhancement paragraph alleging a previous conviction
for illegal dumping.  The cause proceeded to trial before a jury.  After
considering the evidence presented, the jury found the appellant guilty of the
offense charged.  Thereafter, appellant entered a plea of Atrue@ to the
enhancement allegations, and the jury subsequently assessed appellant=s punishment at a
probated sentence of five years and a fine of $10,000.  In three points of error,
appellant contends the trial court submitted two erroneous instructions to the
jury and abused its discretion in excluding certain evidence favorable to him. 
We affirm.

 The record reflects that appellant owned and operated a
business known as Old Orchard Trucking and Waste Systems.  Responding to a
complaint regarding an offensive odor emanating from the business, George
Kennard, a pollution investigator with Harris County Pollution Control, went to
the site on March 8, 2004, at which time he observed a mound of approximately
3,000 cubic yards of trash and garbage.  On March 12, 2004, a citation was
issued to appellant informing him that he was in non-compliance with the Solid
Waste Disposal Act.  Appellant was also instructed to remove and properly dispose
of the trash.

On April 6, 2004, appellant and his attorney met with
Kennard to discuss the legality of his business.  Because the trash had not
been separated into specific components, i.e., glass, plastic, metal, paper,
etc., but was commingled with putrescible garbage, Kennard advised appellant he
was operating a solid waste facility for which he did not have a permit. 
Kennard again instructed appellant to remove the garbage to a properly
permitted landfill.

After receiving additional complaints, Kennard visited Old
Orchard Trucking and Waste Systems on April 23, 2004.  Kennard again observed a
large pile of mixed commingled solid waste.  He repeated his admonition to
appellant that he was operating an unauthorized solid waste facility.

Kennard testified that on May 5, 2004, he returned to the
site at appellant=s invitation.  Kennard observed a person
pulling recyclable material from the pile of garbage.    Another citation was
issued, however, on May 7, 2004.  Two follow up investigations were conducted
on May 13, 2004, and May 18, 2004.  As a result, two additional citations were
issued on May 25, 2004.








Responding to yet another complaint regarding noxious
odors, Kennard went to the site of the business on June 14, 2004, and observed
approximately 4,500 cubic yards of garbage piled on the property.  The unsorted
mixture contained plastic, paper, mattresses, wood, bagged trash, creosoted
timbers, garbage and other waste.  Appellant insisted that he was operating a
recycling facility.  However, Kennard once again advised appellant that he was,
in reality, operating an illegal solid waste facility.  Kennard issued a
citation to appellant and instructed him to move the garbage to a proper
landfill.

The pile of trash and garbage on the site of Old Orchard
Trucking and Waste Systems continued to increase, eventually constituting
approximately 7,000 cubic yards of waste.  On June 25, 2004, the grand jury
returned an indictment against appellant for illegal dumping.

In his first point of error, appellant contends the trial
court erred in submitting separate offenses to the jury in the disjunctive
while asking only for a general verdict thereby permitting the possibility of a
non-unanimous verdict.  The indictment contains what appear to be three
paragraphs alleging that appellant did: (1) Atransport litter or other
solid waste . . . to a place that was not an approved solid waste site for
disposal@; (2) Adispose, allow, or permit
the disposal of litter and other solid waste . . . at a place that was not an
approved solid waste site@; and (3) Areceive litter or other
solid waste . . . at a place that was not an approved solid waste site.@  (Emphasis
added).  In its charge to the jury, the trial court closely tracked the
allegations of the indictment setting forth the charges in disjunctive
paragraphs.  Thus, when the jury returned a general verdict of guilty, it was
possible that some portion of the jury believed appellant was guilty of
unlawfully Atransporting@ solid waste while
others believed he was guilty only of unlawfully Adisposing@ or Areceiving@ solid waste.








 Appellant did not object to the charge, but he contends
the improper charge resulted in Aegregious@ harm and, thus,
no objection was required to preserve reversible error.  See Almanza v.
State, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984) (holding that when no
proper objection was made at trial, the conviction will be reversed only if the
charge error is so egregious that defendant did not have a fair and impartial
trial).  For its part, the State concedes error, but contends we need not
reverse the conviction because appellant was not Aegregiously@ harmed.

It is proper for the State to plead alternative Amanner or means@ in the
conjunctive when proof of any one Amanner or means@ will support a
guilty verdict.  Johnson v. State, 187 S.W.3d 591, 604 (Tex. App.CHouston [14th
Dist.] 2006, pet. ref=d).  In other words, a single indictment
may present allegations of different methods of committing the charged offense
in the conjunctive and the jury may be charged in the disjunctive.  Carty v.
State, 178 S.W.3d 297, 301B02 (Tex. App.CHouston [1st
Dist.] 2005, pet. ref=d).  Thus, an indictment may allege
different manners or means of committing a single offense, and the jurors are
not required to agree upon a single manner or means.  Marinos v. State,
186 S.W.3d 167, 175 (Tex. App.CAustin 2006, pet. filed).[2] 
Accordingly, the first step in a unanimity challenge is to examine the language
of the statute in order to determine whether the legislature intended to create
multiple, separate offenses, or a single offense capable of being committed in
several different ways.  Jefferson v. State, 189 S.W.3d 305, 311 (Tex.
Crim. App. 2006).

It is common form
for the legislature to define an offense with the preparatory phrase Aa person commits
an offense if . . . .@  Thereafter, criminal statutes typically
set forth various manner and means of committing the offense.  For example,
murder is defined by Section 19.02(b) of the Penal Code which provides:

(b) A person commits an offense if he:

(1) intentionally or knowingly causes the death of
an individual;








(2) intends to cause serious bodily injury and
commits an act clearly dangerous to human life that causes the death of an
individual; or

(3) commits or attempts to commit a felony, other than manslaughter,
and in the course of and in furtherance of the commission or attempt, or in
immediate flight from the commission or attempt, he commits or attempts to
commit an act clearly dangerous to human life that causes the death of an
individual.

Tex. Penal Code Ann. ' 19.02(b) (Vernon
2003) (emphasis added).  Although the conduct is distinctly different, the
three methods of committing murder set forth in the statute are different
manner and means of committing the same offense, not distinct and separate
offenses.  See Aguirre v. State, 732 S.W.2d 320, 325B26 (Tex. Crim.
App. 1982) (holding that where indictment contained two paragraphs, the first
alleging murder under ' 19.02(b)(1) and the second alleging
murder under ' 19.02(b)(3), the allegations were merely two
different manner and means of committing the same offense).








Here, the legislature has chosen to define the offense of Aillegal dumping@ in a single
statute.  This constitutes some indication that the legislature intended the
various forms of illegal dumping to be several manner and means of committing
one offense.  Cf. Vick v. State, 991 S.W.2d 830, 832 (Tex. Crim. App.
1993) (holding that where legislature has separately defined offenses in
different statutes, it may be inferred that the legislature sought to define
separate and distinct offenses).  However, in stark contrast with the murder
statute, the Aillegal dumping@ statute contains
three separate allegations of Aa person commits an offense if . . . .@  Tex. Health & Safety Code Ann. ' 365.012(a), (b),
and (c).[3] 
We believe the repeated use of this phrase signals an intention to define
separate offenses, not simply to list the various manners and means of
committing the offense of Aillegal dumping.@

Moreover, the Texas Court of Criminal Appeals has been
progressively moving in the direction of interpreting statutory language in
terms of Amore offenses@ and less in terms
of  Amanner and means.@  For example, in Vick,
991 S.W.2d at 833B34, the court held the legislature
intended the many varied forms of aggravated sexual assault set forth in
Section 22.021 of the Penal Code to be separate and distinct offenses, not
various manner and means of committing the same offense.[4]

Likewise in Ngo v. State, 175 S.W.3d 738, 747B48 (Tex. Crim.
App. 2005), the Court of Criminal Appeals found that each description of credit
card abuse in Section 32.31 of the Penal Code represents a distinct offense.  See
Tex. Penal Code Ann. ' 32.31 (Vernon
2003).  Thus, there are now eleven distinct offenses of credit card abuse set
forth in a single statute.[5]








Accordingly, we find the allegations contained in the
indictment presented here are separate counts (though not labeled as such)
charging appellant with three distinct offenses.  Because the jury returned a
general verdict, it is possible the jury did not return a unanimous verdict as
to any specific offense.  Moreover, it is impossible to know for which offense
he was convicted.

Charge error that permits a jury to reach a non-unanimous
verdict is Aconstitutional@ error.  Ngo,
175 S.W.3d at 752.  A constitutionally deficient jury charge, however, does not
result in automatic reversal of a conviction.  Ex parte Smith, 185
S.W.3d 455, 467 (Tex. Crim. App. 2006).  We must also assess the harm that this
deficient jury charge caused the defendant.  Id.  Whether sufficient
harm resulted from the charging error to require reversal depends upon whether
the defendant specifically objected to the error at trial.  Id.  Under Almanza,[6]
when there has been a timely objection made at trial, we look only for Asome harm.@  Id.  By
contrast, where the error is urged for the first time on appeal, we look for Aegregious harm.@  Id. 

To support his
contention that he was egregiously harmed appellant relies heavily on the Court
of Criminal Appeals decision in Ngo.  In that case, the court found
egregious harm because the prosecutor encouraged the jury to reach a
non-unanimous verdict.  Ngo, 175 S.W.3d at 750B51.  In a similar
manner, here the State=s attorney assumed the indictment alleged
various manner and means of committing a single offense, not separate
offenses.  Thus, she told prospective jurors during her voir dire examination:

Now, what=s important here is that I=ve alleged each of those ways.  However, if at
the close of testimony four of you‑all believe that he transported, four
of you believe he disposed of it, four of you believe that he received it,
if you are unanimous in your verdict then, and I prove all of my elements to
you beyond a reasonable doubt, then you find the defendant guilty.  Do
you understand how that works?  All twelve of you don=t have to agree that it was transport. 
All twelve of you don=t have to agree it was received.  Okay.








And if you have any questions just stop me.

I=m going to specifically quickly run through what the
judge had already read to you and I know, folks, you folks over there can=t see that but I=m going to read it
and the judge has already read this to you.  These are the things that I have
to prove.  I have to show that Ricky Lynn Gandy, on or about June 14, 2004, in
Harris County, Texas, for a commercial purpose, did intentionally or knowingly either
transport or dispose or receive litter or solid waste, namely, construction
and demolition waste or tree parts or mixed plastics or cardboard or food boxes
or furniture or mattresses or packing foam or food or garbage.

(Emphasis
added).

Likewise, during her final argument, the State=s attorney
reminded the jury, AI have to also show you that he either
transported or B remember all these are or=s B or disposed or
received.@

The State contends the error does not rise to the level of Aegregious@ error because
appellant admitted to Atransporting,@ Adisposing,@ and Areceiving@ litter.  Thus,
the only significant issue at trial was whether appellant was lawfully
operating a recycling center or unlawfully operating a solid waste
dump.

In Dixon v. State, 201 S.W.3d 731, 735 (Tex. Crim.
App. 2006), the Court of Criminal Appeals held that where, as here, there is no
basis in the record to believe that jurors could have found the defendant
guilty of one offense, without also finding him guilty of all of the offenses
alleged in the indictment, the defendant has not been harmed.  Accordingly,
while the record reflects the State=s attorney
unknowingly encouraged the jury to reach a non-unanimous verdict, it was
virtually impossible for the jury to do so under the facts and circumstances of
this case.  Therefore, we find appellant was not egregiously harmed by the
faulty jury charge.  Appellant=s first point of error is overruled.








In his second point of error, appellant contends the trial
court erred in not submitting an instruction informing the jury that the Atemporary storage
[of litter] for future disposal@ is not an offense.  Tex. Health & Safety Code Ann. ' 365.012(k).[7] 
Thus, appellant argues the jury was unlawfully permitted to convict him of
illegal dumping even if it believed appellant was storing the waste Atemporarily@ for future
disposal.  Appellant concedes he did not object to this alleged omission in the
jury charge, but claims the error is reversible under Almanza=s egregious harm
standard.  However, the Court of Criminal Appeals declared in Posey v. State,
966 S.W.2d 57, 60 (Tex. Crim. App. 1998) that Almanza does not apply to Athe omission in
the jury charge of defensive issues that have not been properly preserved by a
defendant=s request or objection.@  The trial court
simply has no duty Ato sua sponte instruct the jury on
defensive issues.@  Id. at 61.  Thus, no error is
presented, and appellant=s second point of error is overruled.

In his third point of error, appellant asserts the trial
court erred in excluding documentary evidence offered to prove he was recycling,
rather than dumping, solid waste on his property.  In this regard, appellant
offered numerous receipts indicating he had sold or recycled metals and other
materials in 2002 and 2003.  The State=s attorney
objected to the admission of these documents because the activity for which
appellant was prosecuted occurred in 2004.  The court sustained the State=s objection. 
Appellant was, however, permitted to introduce such documents from 2004.








Error under the rules of evidence in the admission of
evidence constitutes nonconstitutional error.  Johnson v. State, 967
S.W.2d 410, 417 (Tex. Crim. App. 1998).  A reviewing court is to disregard a
nonconstitutional error that does not affect the substantial rights of the
defendant.  Tex. R. App. P. 44.2(b). 
A substantial right is affected when the error had a substantial and injurious
effect or influence in determining the jury=s verdict.   King
v. State, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997).  The fact that
appellant may not have been operating a solid waste site in 2002 and 2003 has
little or no logical relevance to whether he began operating such a site in
2004.  Thus, the trial court did not err in excluding the evidence.  Moreover,
even if the trial court erred in excluding the evidence, the error did
not affect the substantial rights of appellant.  Appellant=s third point of
error is overruled

The judgment of the trial court is affirmed.

 

 

 

 

 

/s/      J. Harvey Hudson

Justice

 

 

 

 

Judgment rendered
and Opinion filed March 1, 2007.

Panel consists of
Justices Yates, Anderson, and Hudson.

Publish C Tex. R. App. P. 47.2(b).









[1]  See Tex.
Health & Safety Code Ann. '
365.012 (Vernon 2001).





[2]    See also Martinez v. State, 129 S.W.3d 101, 106 (Tex. Crim.
App. 2004) (holding that when the charge authorizes the jury to convict on more
than one theory, a guilty verdict will be upheld if the evidence is sufficient
on any one of the theories); Swearingen v. State, 101 S.W.3d 89, 95
(Tex. Crim. App. 2003) (same).





[3]  The statute provides, in pertinent part:

(1)  A
person commits an offense if the person disposes or allows or permits the
disposal of litter or other solid waste at a place that is not an approved
solid waste site, including a place on or within 300 feet of a public highway,
on a right-of-way, on other public or private property, or into inland or
coastal water of the state.

(b) A
person commits an offense if the person receives litter or other solid
waste for disposal at a place that is not an approved solid waste site,
regardless of whether the litter or other solid waste or the land on which the
litter or other solid waste is disposed is owned or controlled by the person.

(c) A
person commits an offense if the person transports litter or other solid
waste to a place that is not an approved solid waste site for disposal at the
site.

Tex. Health & Safety Code
Ann. '
365.012 (emphasis added).





[4]  By this logic, an actor who penetrates the sexual
organ of his child victim with his own sexual organ commits, in one act, two
separate and distinct offenses for which he may be separately convicted. 
See Tex. Penal Code Ann. ' 22.021(a)(B)(i) and (iii) (Vernon Supp. 2006).  While
this holding raises obvious double jeopardy concerns, we are, as an
intermediate appellant court, instructed by it.  Hendrix v. State, 150
S.W.3d 839, 860 (Tex. App.CHouston [14th
Dist.] 2004, pet. ref=d) (Hudson, J., concurring).   





[5]  In light of Ngo, if an actor, who has no
money, steals a credit card and uses it to make a single purchase, he can now
be convicted of not one, but five different offenses.  Tex. Penal Code Ann. '
32.31(b)(1), (3), (4), (7), and (8).





[6]  Almanza, 686 S.W.2d at 171.





[7]  This portion of the statute states:

This
section does not apply to the temporary storage for future disposal of litter
or other solid waste by a person on land owned by that person, or by that
person=s agent.  The commission by rule shall regulate
temporary storage for future disposal of litter or other solid wast by a person
on land owned by the person or the person=s
agent.