# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-14-00595-CR

**Andrew Garraway, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF HAYS COUNTY, 274TH JUDICIAL DISTRICT
### NO. CR-11-0925, HONORABLE GARY L. STEEL, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury convicted appellant Andrew Garraway of theft. *See* Tex. Penal Code § 31.03. Punishment was assessed at two years' confinement in state jail, but the district court suspended imposition of the sentence and placed Garraway on community supervision for five years. In six issues with various subparts, Garraway contends that the theft charge should not have been submitted to the jury because theft is not a lesser-included offense of burglary, that the charge erroneously allowed the jury to convict him without requiring unanimous agreement on every instance of theft, that the court abused its discretion in admitting certain exhibits and testimony over his objections, and that the evidence was legally insufficient to support his conviction. We will affirm the judgment.

## BACKGROUND[1]

Andrew Garraway was charged by indictment with twenty counts of burglary of a habitation.[2] Each count in the indictment alleged the date of the offense, the county where the offense occurred, the name of the victim, lack of consent from the victim, and that Garraway entered each habitation "with the intent to commit theft, did attempt to commit theft, and did commit theft." At trial, the jury heard testimony from five of the twenty victims named in the indictment, along with testimony from Garraway, Garraway's accomplice Justin Kajileh, and employees of the businesses where Garraway and Kajileh pawned items.

The victims were residents of apartment complexes in Hays County where many college students lived. Five victims testified about the items stolen from their respective apartments, including credit cards, cash, a computer, an iPod, a small digital camera, an $800 SLR camera, a television, a laptop, a saxophone, a graphing calculator, an Xbox console, controllers, and games.[3] Owners of the credit cards learned that their cards had been used at several stores without their permission. All five of the victims who testified stated that they did not know Garraway and had not given him consent to enter their apartments or to take their property.

Kajileh, Garraway's accomplice, testified that Garraway was a childhood friend and college classmate who asked Kajileh for a loan to get his car out of the shop. Because Kajileh

---

[1] Because the State adopts Garraway's statement of facts, much of the background is taken from the parties' briefs.

[2] The State abandoned two counts at trial.

[3] Police recovered some of the items stolen from the residents of the three apartment complexes and returned those items to the victims.

did not have the money, he said that he and Garraway turned to burglary, targeting apartment complexes in the pre-dawn hours and looking for unlocked doors. Kajileh testified that he and Garraway started their burglaries in the same apartment complex where Kajileh lived and took things from five apartments on the first night. According to Kajileh, he stood watch while Garraway entered the apartment to take money or things that were worth money, including a saxophone, TV, and Xbox. Kajileh testified that items taken from the first burglary alone were sold at pawnshops in Austin for $1,500.

After "being so successful the first night," Kajileh said he and Garraway took more things from unlocked apartments and sold them to pawnshops, mainly in Austin but once or twice to shops in San Antonio.[4] Kajileh testified that sometimes only one of them would enter the pawnshop and the other would wait in the car to avoid being seen in the shop together frequently and reduce the risk of being recognized. Kajileh recalled that he and Garraway quickly used the credit cards they took to buy food, gas, and gift cards before the credit cards were deactivated. Kajileh acknowledged that the gift cards could be used even after a victim's credit card was canceled. Kajileh testified that anytime he committed a burglary, Garraway was with him. Kajileh denied that any of the victims named in the indictment had given him or Garraway permission to enter their apartments or to take any property.

Kajileh testified that he was surprised when Garraway's girlfriend notified him that Garraway was arrested. Kajileh also testified that he was called in by police for questioning the

---

[4] Kajileh testified that he and Garraway sold the items to the pawnshops for cash. The items were not "pawned" because he and Garraway did not want the property returned if it did not sell.

following week, after which he confessed and provided some of the stolen property in his possession to the police.

Contrary to Kajileh's testimony, Garraway testified that he did not participate in any of the burglaries and that he only helped Kajileh pawn items. Garraway testified that he was a "broke college student" and that Kajileh offered him a way to make money. Garraway admitted at trial that pawning the items was wrong and that the items were probably stolen or "black market," but he testified that he never inquired about the source of the items, considering it a "don't ask, don't tell" situation. Garraway also admitted that he used credit cards that he knew did not belong to him. Garraway agreed that the pawning of the items and using the credit cards was a common scheme. He testified that the value of all the items he and Kajileh pawned would be over $1,500 and that a list summarizing all the pawned items that was admitted into evidence appeared accurate. Garraway acknowledged that the value he received from the pawnshops was at the bottom end of the items' value.

Police detectives testified about their investigation of the case, and pawnshop managers testified about the transactions involving Kajileh and Garraway, some of which were captured on security videotapes and presented to the jury. At the conclusion of the trial, the jury convicted Garraway of theft but acquitted him of the burglary charges, and the court suspended imposition of his sentence, placing Garraway on community supervision for five years. This appeal followed.

## DISCUSSION

**Theft charge properly submitted to jury**

Garraway contends that the theft charge against him should not have been submitted to the jury because theft was not a lesser-included offense of burglary of a habitation as indicted in this case. According to Garraway, the indictment is flawed for not specifying every element of the lesser-included offense of theft. An offense is a lesser-included offense if it is established by proof of the same or less than all the facts required to establish the commission of the offense charged. Tex. Code Crim. Proc. art. 37.09(1). The Texas Court of Criminal Appeals has held that one offense is a lesser-included offense of another if the indictment for the greater-inclusive offense: (1) alleges all of the elements of the lesser-included offense, or (2) alleges elements plus facts from which all of the elements of the lesser-included offense may be deduced. *State v. Meru*, 414 S.W.3d 159, 162 (Tex. Crim. App. 2013) (citing *Ex parte Watson*, 306 S.W.3d 259, 273 (Tex. Crim. App. 2009)). Elements of the lesser-included offense do not have to be pleaded in the indictment when they can be deduced from facts in the indictment. *Id.* In this situation, the reviewing court may use a functional-equivalence test, examining the elements of the lesser offense and deciding whether they are "functionally the same or less than those required to prove the charged offense." *Id.*

A person commits the offense of burglary of a habitation, the greater-inclusive offense alleged in this indictment, by entry into a habitation without the effective consent of the owner and committing or attempting to commit a felony, theft, or an assault. Tex. Penal Code § 30.02(a)(3). The State charged Garraway in each count of his indictment with "intentionally or knowingly, enter[ing] a habitation without the effective consent of [identified victim], the owner thereof, with

5

the intent to commit theft, did attempt to commit theft, and did commit theft." Theft is the appropriation of property without the owner's effective consent with intent to deprive the owner of the property. *Id*. § 31.03(a). In this case, the offense of theft is a lesser-included offense of burglary of a habitation because it is established by proof of the facts of burglary of a habitation as Garraway was charged, less proof of entry into the habitation. *See Goad v. State*, 354 S.W.3d 443, 446 (Tex. Crim. App. 2011) (applying same test in determining whether criminal trespass was lesser-included offense of burglary of a habitation); *Garcia v. State*, 571 S.W.2d 896, 899 (Tex. Crim. App. 1978) (noting in discussion of lesser-included offenses that elements of burglary of a habitation under section 30.02(a)(3) "could well include the commission of a theft"). We overrule Garraway's contention that the theft charge should not have been submitted to the jury as a lesser-included offense of his indictment for burglary of a habitation.

**No charge errors**

Garraway next contends that in this aggregated-theft case, the charge erroneously allowed the jury to convict him without requiring unanimous agreement on every instance of theft. However, the Texas Court of Criminal Appeals has rejected that contention, holding that in aggregated-theft cases, "[e]very instance of theft need not be unanimously agreed upon by the jury." *Kent v. State*, 483 S.W.3d 557, 562 (Tex. Crim. App. 2016) (concluding that "unanimity requires that the jurors agree that the threshold amount has been reached and that all the elements are proven for each specific instance of theft that the individual juror believes to have occurred").

Garraway also complains that the application section of the charge did not specify which statutory definition of "unlawful" appropriation of property was relied upon for establishing

6

theft. *See* Tex. Penal Code § 31.03(b) (noting circumstances in which appropriation of property is unlawful, including if it is without owner's effective consent, or if property is stolen and actor appropriates property knowing it was stolen by another). But when, as here, the indictment for theft does not specify a particular statutory definition of unlawful appropriation of property, the charge need not contain that specific statutory definition either. *See Geick v. State*, 349 S.W.3d 542, 547 (Tex. Crim. App. 2011) (noting that it is unnecessary for State to choose between statutory alternatives for unlawful appropriation when pleading offense of theft); *Ex parte Luna*, 784 S.W.2d 369, 371 (Tex. Crim. App. 1990) (concluding that State need not plead manner of acquisition or circumstances surrounding theft offense because those are evidentiary matters, that pleading theft offense in terms of Penal Code section 31.03(b) constitutes surplusage, and that State's theory as to how theft offense occurred is irrelevant); *see also Martinez v. State*, No. 08-13-00363-CR, 2016 Tex. App. LEXIS 5128, at *23 (Tex. App.—El Paso May 13, 2016, no pet.) (not designated for publication) (concluding that because indictment for theft did not specifically allege any statutory definition for unlawful appropriation of property, trial court was not required to include definition in application paragraph of jury charge). We overrule Garraway's complaints that the jury charge did not require unanimous agreement on every instance of theft and that the application section of the charge did not specify which statutory definition of "unlawful appropriation" was relied upon.

**No abuse of discretion and no harm from evidentiary rulings**

Garraway also contends that the trial court erred in its evidentiary rulings, admitting certain exhibits and testimony over his objections to hearsay, confrontation-clause violation, and

7

prejudice. Garraway complains about the admission of exhibits consisting of LeadsOnline data and summaries of the LeadsOnline data. Garraway also complains that Kajileh should not have been allowed to testify that none of the victims gave Garraway consent to enter their apartments or to take their property, and that Detective Mark Jarman should not have been allowed to testify that he had spoken with the victims listed in the indictment who identified the property as theirs. We review a trial court's ruling on the admission of evidence under an abuse of discretion standard and uphold the trial court's ruling if it is within the zone of reasonable disagreement. *Tillman v. State*, 354 S.W.3d 425, 435 (Tex. Crim. App. 2011).

### 1. LeadsOnline data

Garraway contends that the trial court abused its discretion by admitting an exhibit of LeadsOnline pawnshop sales data that contained hearsay. The State offered the data through Detective Adrian Marin under the business-records exception to the hearsay rule. Tex. R. Evid. 801(d), 803(6). The State specified that the officer was not the custodian of records but an "other qualified witness" under the business-records exception. *See* Tex. R. Evid. 803(6). On appeal, Garraway contends that the business-records exception does not apply because the State did not offer the exhibit through an "other qualified witness." However, because Garraway did not raise that objection in the trial court (instead objecting that Detective Marin could not testify as a custodian of records), it is not properly before us on appeal. *See* Tex. R. App. P. 33.1(a); *Carty v. State*, 178 S.W.3d 297, 305 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd) (concluding that appellate complaint about admission of business records based on contention that person was not "another

8

qualified witness" under Rule 803(6) did not comport with objection at trial and was not preserved for review).

Garraway also contends that even if an exception to the hearsay rule applies, admission of the exhibit violated his right to confront witnesses against him. However, the Confrontation Clause bars only statements that are testimonial in nature; statements in records that were not created for the purpose of establishing some fact at trial and that would exist as part of business records even if no charges had ever been filed are not testimonial and do not violate the Confrontation Clause. U.S. Const. amends. VI, XIV; *LaMotte v. State*, No. 01-15-00368-CR, 2016 Tex. App. LEXIS 7779, at *22 (Tex. App.—Houston [1st Dist.] July 21, 2016, no pet.) (mem. op., not designated for publication). Here, because the exhibit consisted of data showing pawnshop transactions that were documented as part of the pawnshops' ordinary business operations, the data was not created for the purpose of establishing some fact at trial, and the data would have existed even if charges had never been filed against Garraway, such data was not testimonial and did not violate the Confrontation Clause. *See LaMotte*, 2016 Tex. App. LEXIS 7779, at *22.[5]

Garraway further contends that the exhibit was irrelevant and more prejudicial than probative. *See* Tex. R. Evid. 403, 404. However, the improper admission of evidence "will not result in reversal when other such evidence was received without objection, either before or after the

_____

[5] Garraway complains on appeal that this exhibit contains detectives' handwriting, but he did not preserve that complaint with an objection at trial. *See* Tex. R. App. P. 33.1(a). It was his burden to narrow his objection for the trial court and identify the material about which he now complains. *See Blackstock v. State*, No. 14-03-01415-CR, 2007 Tex. App. LEXIS 72, at *14 (Tex. App.—Houston [14th Dist.] Jan. 9, 2007, no pet.) (mem. op., not designated for publication) (citing *Brown v. State*, 692 S.W.2d 497, 501 (Tex. Crim. App. 1985)).

complained-of ruling." *Coble v. State*, 330 S.W.3d 253, 282 (Tex. Crim. App. 2010) (quoting *Leday v. State*, 983 S.W.2d 713, 718 (Tex. Crim. App. 1998)). At trial, Garraway argued that the danger of the jury seeing this documentation was that they would get the impression that "all of this must be stolen." Here, the jury heard other evidence without objection that would give them the same impression, including Kajileh's testimony that all the property that was pawned had been taken from someone else and Garraway's acknowledgment that the items they pawned were probably stolen or "black market," but he took a "don't ask, don't tell" approach to the source of the items. We conclude that any error in admitting the LeadsOnline data was harmless, and we overrule Garraway's complaint about its admission.

### 2. LeadsOnline summaries

Garraway next complains that the trial court abused its discretion by admitting two separate exhibits summarizing the LeadsOnline data from the earlier exhibit and pawn ticket information that the detectives presented to the pawnshops. The only objection Garraway raised to these summaries at trial and on appeal was that the summaries contained hearsay. A summary is admissible under Texas Rule of Evidence 1006 if the underlying documents are admissible under one of the exceptions to the hearsay rule. *See Rodriguez v. State*, 90 S.W.3d 340, 373 (Tex. App.—El Paso 2001, pet. ref'd). We have already overruled Garraway's objections to the admission of the exhibit of LeadsOnline data. Garraway does not dispute that the LeadsOnline data was voluminous, that the exhibit containing the same data had already been admitted as a business record, and that the information contained in the summaries was obtained from that record, thus the trial court's decision to admit the summaries was within the zone of reasonable disagreement. *See*

*Tillman*, 354 S.W.3d at 435; *Rodriguez*, 90 S.W.3d at 373-74. Further, any error in the admission of the summaries would have been harmless, not only because the evidence in the summaries was already admitted through the LeadsOnline data exhibit, but also because of the testimony from witnesses about the pawn transactions in those records. *See Rodriguez*, 90 S.W.3d at 374. We overrule Garraway's complaint about the admission of the LeadsOnline summaries.

### 3. Kajileh's testimony about lack of consent

Garraway contends that the trial court abused its discretion by admitting Kajileh's testimony that none of the victims named in the indictment had given Garraway consent to enter their apartments or to take any of their property because the testimony contained hearsay and violated the Confrontation Clause. Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. Tex. R. Evid. 801(d). A "statement" for purposes of the hearsay rule "means a person's oral or written verbal expression, or nonverbal conduct that a person intended as a substitute for verbal expression." *Id.* R. 801(a). Here, Garraway complains of no "statement," as defined in Rule 801(a), but rather Kajileh's trial testimony about the absence of a statement from any of the victims, which is not hearsay. *Cf. id.*; *see Riley v. State*, 249 S.W. 1065, 1065 (Tex. Crim. App. 1923) (rejecting hearsay challenge to daughter's testimony that her mother had not consented to appellant's taking of mother's property). The Confrontation Clause of the Sixth Amendment guarantees the accused the right to confront the witnesses against him. U.S. Const. amends. VI, XIV; *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 309 (2009). Here, because Kajileh appeared at trial and was cross-examined by Garraway's counsel, there was no Confrontation Clause violation. *See Melendez-Diaz*, 557 U.S. at 309. Because the trial court's admission of Kajileh's testimony about lack of consent

11

was within the zone of reasonable disagreement, *see Tillman*, 354 S.W.3d at 435, we overrule

Garraway's complaint that the trial court abused its discretion by admitting it.

### 4. Detective Jarman's testimony that theft victims identified property as theirs

Garraway also contends that the trial court abused its discretion by admitting

Detective Jarman's testimony that the theft victims identified stolen property as theirs. According

to Garraway, such testimony included hearsay and violated the Confrontation Clause. However,

Garraway failed to raise his Confrontation Clause objection when this testimony was offered and has

not preserved it for our review. *See* Tex. R. App. P. 33.1(a); *Wright v. State*, 28 S.W.3d 526, 536

(Tex. Crim. App. 2000) (holding that hearsay objection does not preserve Confrontation Clause

objection for appellate review). Garraway also failed to raise his hearsay objection and has not

preserved it as to Detective Jarman's testimony about all but one of the victims who identified the

stolen property as theirs. *See* Tex. R. App. P. 33.1(a). As to that one victim, H.L.-B., Detective

Jarman testified to substantially the same evidence without objection when he stated that the victims

were called to come to the police department, that he personally spoke with each and every victim

as they came in, that he signed the property return sheets, and that he returned a stolen Xbox 360 to

H.L.-B. *See Benitez v. State*, No. 05-13-00199-CR, 2014 Tex. App. LEXIS 7651, at *16 (Tex.

App.—Dallas July 15, 2014, pet. ref'd) (not designated for publication) (concluding that any error

in admission of evidence is rendered harmless when substantially same evidence admitted without

objection) (citing *Coble*, 330 S.W.3d at 282). We conclude that any error in admitting Detective

Jarman's testimony was harmless, and we overrule Garraway's complaint about its admission.

**Sufficient evidence supported Garraway's conviction**

Garraway's final complaint is that the evidence at trial was insufficient to support his conviction for theft of property valued at $1,500 or more but less than $20,000. Under the legal-sufficiency standard, we view the evidence in the light most favorable to the verdict and determine whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010). We may not substitute our judgment for that of the jury by reevaluating the weight or credibility of the evidence, but must defer to the jury's resolution of conflicts in the evidence, weighing of the testimony, and drawing of reasonable inferences from basic facts to ultimate facts. *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). We apply the same standard to direct and circumstantial evidence. *Id.* Circumstantial evidence is as probative as direct evidence in establishing the guilt of a defendant, and circumstantial evidence alone can be sufficient to establish guilt. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). Each fact need not point directly and independently to appellant's guilt, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction. *Id.*

Conviction for theft requires proof of an unlawful appropriation of property with the intent to deprive the owner of the property. Tex. Penal Code § 31.03(a); *see also Luna*, 784 S.W.2d at 371 ("So long as the evidence is sufficient to prove that appellant unlawfully appropriated the property in question with the 'intent to deprive the owner of the property' appellant's conviction must stand."). Garraway's challenge to the sufficiency of the evidence is that there is no evidence as to: (1) the identity of the majority of the owners; (2) their lack of consent; and (3) a property value falling within the state jail felony range. In Garraway's view, the evidence supported only a

13

misdemeanor theft of property valued at $500 or more but less than $1,500. Specifically, Garraway acknowledges that the evidence at trial supported a value of $1,270: $800 for a camera belonging to C.S., $350 for a saxophone belonging to A.Z., and $120 for an Xbox, controllers and other items belonging to A.D.

We conclude that the evidence in this record was legally sufficient to identify the victims, prove lack of consent, and prove the value of the property to the jury. Five victims testified at trial, providing their identities and testifying that they did not know Garraway and had not given him consent to take or use their property. As to the remainder of the victims, Detective Jarman testified about their identities, how he obtained them, and that he personally returned their property to them. Kajileh testified that neither he nor Garraway had consent to take any of the victims' property. Both Garraway and Kajileh sold items to pawnshops, and Garraway testified that he knew the items were probably stolen or "black market" and that pawning the items was wrong. When making those sales to the pawnshops, Garraway and Kajileh represented that they were owners of the property being sold, showing an intent to deprive the true owners of those items. Garraway admitted at trial that the pawning of the items was done pursuant to a common scheme. Detective Jarman testified that his calculation of the monetary value that Garraway and Kajileh received from the pawnshops was $2,875. The LeadsOnline data and pawn tickets listed the payments to Garraway and Kajileh from the pawnshops. Garraway acknowledged that the value he received from the pawnshops was at the bottom end of the items' value. Garraway testified that the value of all the items he and Kajileh pawned would be over $1,500 and that the list summarizing all the pawned items that was admitted into evidence appeared accurate to him. Further, Garraway testified that he had previously purchased game systems and controllers for himself, that the new value of an Xbox

14

game system when he bought it was about $400 (although Detective Jarman had testified that their cost was between $250 and $299 new). Evidence at trial showed at least 2 Xbox game systems sold to the pawnshops by Garraway were returned to their owners, H.L.-B. and B.S. The value of these game systems (whether valued using Detective Jarman's testimony of $250 or Garraway's testimony of $400 each) plus the $1,270 value that Garraway already acknowledged was shown at trial, exceeds $1,500.

The evidence at trial, viewed in the light most favorable to the verdict, was sufficient to allow a rational jury to find beyond a reasonable doubt that Garraway committed the lesser-included offense of theft. *See Brooks*, 323 S.W.3d at 899. Accordingly, we overrule Garraway's complaint about the sufficiency of the evidence supporting his conviction for theft of property valued at $1,500 or more but less than $20,000.

## CONCLUSION

We affirm the judgment of conviction.

_____

Jeff Rose, Chief Justice

Before Chief Justice Rose, Justices Goodwin and Field

Affirmed

Filed: April 11, 2017

Do Not Publish

15